## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BELIA ARLENE OCASIO and EFRAÍN COLÓN DAMIANI, <br><br> *Plaintiffs,* <br><br> v. <br><br> COMISIÓN ESTATAL DE ELECCIONES and JUAN DÁVILA-RIVERA, in his official capacity as President of the Comisión Estatal de Elecciones, <br><br> *Defendants.* | Civil Action No. <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## <u>INTRODUCTION</u>

1.     Puerto Rico's current early and absentee voting policies will force senior citizens and those with underlying health conditions to choose between two irreparable harms in November:  violating public health social distancing guidelines designed to protect them and their loved ones, or foregoing their fundamental right to vote in the general election.

2.     Puerto Rico offers very limited alternatives to "in-person, day-of" voting.  The *voto adelantado* or "early voting"—which occurs in person—is only allowed for certain categories of individuals, with no exceptions made for senior citizens.  The *voto ausente* or "absentee voting" (i.e. mail-in), is similarly cabined and available only for those who reside in Puerto Rico, but happen to be outside of

the island on the day of the elections for enumerated reasons, such as working or studying outside of Puerto Rico.

3.      These restrictions are burdensome under any circumstances, but during the coronavirus ("COVID-19") pandemic, Puerto Rico's early and absentee voting policies are not merely restrictive; they are dangerous, especially for senior citizens. Plaintiffs bring this lawsuit in an attempt to protect both their right to vote and their health, and seek a ruling that the Comisión Estatal de Elecciones de Puerto Rico (the "Commission") must allow senior citizens access to early and absentee voting for the general election in November.

4.      COVID-19 poses a serious threat to the health of both Americans and American elections.  Puerto Rico is not immune.  Puerto Rico currently has a seven-day average transmission rate of over 500 new confirmed cases a day.  Given the prevalence of COVID-19 on the island, the likelihood that COVID-19 will spread at Puerto Rico's voting locations—prime breeding grounds for the virus—is incredibly high.

5.      As a result, Puerto Rico's early and absentee voting policies make it *especially* vulnerable to the risk of suppressed voter participation during the current pandemic.  Puerto Rico's early and absentee voting restrictions require its residents, including senior citizens and those with underlying health conditions—individuals most at risk—to violate social distancing protocols and the safety recommendations

made by the Centers for Disease Control and local governments in order to exercise their right to vote.

6.      Recognizing these serious and imminent dangers, Puerto Rico's Legislative Assembly passed a Joint Resolution in June 2020 expanding the categories of individuals eligible for early voting for the primaries to include, among others, individuals with compromised immune systems and senior citizens, defined by the Legislative Assembly as individuals over 60 years of age.  The Joint Resolution also authorized the Commission to adopt any policies and practices targeted at protecting the health and safety of voters, and postponed the date of Puerto Rico's primaries to allow the Commission time to implement the necessary health and safety measures.

7.      Shortly thereafter, Governor Wanda Vázquez-Garced signed into law the Código Electoral de Puerto Rico 2020 ("Election Code")—applicable to the general election in November and all subsequent elections—which, for the first time, authorized the Commission to allow early voting by mail.  The Election Code also created additional categories of voters eligible for absentee and early voting—which did not include senior citizens—and authorized the Commission to further expand eligibility at its discretion.

8.      Despite these authorizations, the Commission has been entirely silent as to what protective health measures it will adopt for the general election in

3

November, if any.  This is so notwithstanding the recent surge in COVID-19 cases on the island and predictions of even more infections in the fall, and despite disastrous overcrowding and long wait times that occurred during Puerto Rico's primary elections.  Without any protective measures, Plaintiffs will be forced to face similar, if not larger, crowds in order to vote in person for the general election on November 3, or accept disenfranchisement.

9.     Plaintiffs' constitutional right to vote cannot be conditioned on their willingness to subject themselves, their families, and their communities to a heightened risk of COVID-19.  This is particularly true when the policies forcing senior citizens to vote in person serve no compelling legitimate state interests.

10.     Plaintiffs therefore seek a temporary restraining order, preliminary and permanent injunctions, and a declaratory judgment permitting Puerto Rico's senior citizens (defined, as the Legislative Assembly has, as individuals over sixty (60) years of age), to vote early or by absentee ballot in the November 2020 general election.

## JURISDICTION AND VENUE

11.     The action arises under the First and Fourteenth Amendments to the U.S. Constitution and is brought under 42 U.S.C. § 1983 to seek injunctive and declaratory relief for violations of constitutional rights.  This Court therefore has

jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

12.     This Court has personal jurisdiction over Defendant Comisión Estatal de Elecciones, an authority and/or agency and/or a public or quasi-public corporation by virtue of the Enabling Act number 4 of December 23, 1977, as amended, with sufficient authority to sue and be sued.  The Commission is located in Puerto Rico.

13.     This Court has personal jurisdiction over Defendant Juan Dávila-Rivera, who is an elected or appointed government official and resides in Puerto Rico.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside in this District and because the events and omissions giving rise to Plaintiffs' claims occurred in this District.

15.     This Court has authority to issue both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

16.     Plaintiff Belia Arlene Ocasio is a 67-year-old U.S. citizen who lives in San Juan, Puerto Rico.  She is lawfully registered to vote in Puerto Rico.  Ms. Ocasio has voted in person in Puerto Rico all of her life, and has voted in every general election since 1971.  Ms. Ocasio has also voted in every primary election of consequence, including the August 9, 2020 primary election.  Ms. Ocasio is at risk

of severe complications from COVID-19 because of her age and preexisting medical conditions. Specifically, Ms. Ocasio suffers from asthma that causes her severe chest pain and shortness of breath. She seeks to vote in the 2020 general election, but under the existing rules, may do so only in person, potentially endangering her health.

17. Plaintiff Efraín Colón Damiani is a 69-year-old U.S. citizen who lives in San Juan, Puerto Rico. He is lawfully registered to vote in Puerto Rico. Mr. Colón has voted in person in Puerto Rico all of his life, and has voted in every general election since 1972. Mr. Colón, however, was unable to vote in the August 9, 2020 primary election because he was afraid of being exposed to COVID-19. Mr. Colón is at risk of severe complications from COVID-19 because of his age and preexisting medical conditions. Mr. Colón suffers from hypertension, for which he takes medication. He seeks to vote in the 2020 general election, but under the existing rules, may do so only in person, potentially endangering his health.

18. Defendant Comisión Estatal de Elecciones ("the Commission") is the government agency that oversees and manages elections in Puerto Rico. The Commission is tasked with guaranteeing the right to all voters to exercise their vote in a democratic electoral process.

19. Defendant Juan Dávila-Rivera is the current President of the Commission.

# FACTUAL BACKGROUND

## I.     Transmission of COVID-19 and Public Health Guidelines

20.     COVID-19, also known as SARS-CoV-2, is an infectious disease caused by a novel coronavirus that has spread throughout the world at an alarming pace.

21.     The virus spreads very easily and in a number of ways.  For example, the virus can be spread through droplet transmission.  In other words, when an infected individual speaks, coughs, or sneezes, they expel droplets which can transmit the virus to others in their proximity.  COVID-19 is also aerosolized and can be transmitted by inhaling contaminated tiny droplets that remain in the air. Lastly, the virus is also known to be spread through the touching of contaminated surfaces.  Each infected individual is estimated to infect two to eight others, and asymptomatic individuals may also transmit the virus to others.

22.     COVID-19 transmission can occur in any location, but is particularly likely indoors.  Transmission via respiratory droplets occurs where there is close contact between individuals, and the more closely a person interacts with an infected individual and the longer that interaction, the higher the risk of COVID-19 spread. Aerosolized transmission can occur even without physical proximity between individuals, and is more likely to occur in enclosed spaces without adequate ventilation.

23.    Because transmission of the virus can occur via environmental surfaces, there is also risk of spread of the virus at any location where multiple individuals touch surfaces.

24.    The range of consequences from contracting COVID-19 is extensive. Individuals who contract the virus typically present with a fever, cough, and shortness of breath, which can escalate to respiratory failure, heart damage, and other life-threatening complications.    Other individuals infected with the virus have experienced muscle aches, headaches, chest pain, diarrhea, coughing up blood, sputum production, runny nose, nausea, vomiting, sore throat, confusion, lack of senses of taste and smell, and anorexia.  While many infected individuals are entirely asymptomatic, many others—including many senior citizens—have died from the virus.

25.    The CDC has classified older adults and those with underlying health conditions as high-risk individuals.  The CDC found that the risk for severe illness from COVID-19 increases with age.[1]  Additionally, people with certain underlying medical conditions may also be at increased risk from COVID-19, including those affected by asthma or hypertension, amongst other conditions.[2]

---

[1]    *People at Increased Risk of Severe Illness: Older Adults*, CENTERS FOR DISEASE CONTROL AND PREVENTION,  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (updated June 25, 2020).

[2]    *People at Increased Risk of Severe Illness: People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-

26.     In the approximately five months since the World Health Organization ("WHO") declared it a global pandemic on March 11, COVID-19 has ravaged the United States.  As of August 19, 2020, it has infected more than 5.4 million and killed more than 170,000 people in the United States.[3]  Puerto Rico has seen at least 28,000 confirmed positive cases and over 360 confirmed deaths as of August 19, 2020, with more than 3,800 confirmed cases in the last seven days.  Given limitations in testing, these figures doubtless understate the real numbers of COVID-19 victims. Nevertheless, Puerto Rico now ranks fourth in the United States for growth of cases per capita as of August 17, 2020.[4]

27.     The Food and Drug Administration has not approved any medication for the treatment of COVID-19, though potentially promising experimental treatments are under investigation.  Likewise, there is no generally available vaccine for COVID-19, nor is one vaccine likely to become widely available before the November 2020 general election.

---

extra-precautions/people-with-medical-conditions.html (updated July 30, 2020); *Coronavirus Disease (COVID19) Advice for the Public: Mythbusters*, WORLD HEALTH ORGANIZATION, https://cutt.ly/dtEiCyc (last accessed Aug. 19, 2020) ("Older people, and people with pre-existing medical conditions (such as asthma, diabetes, heart disease) appear to be more vulnerable to becoming severely ill with the virus.").

[3]   *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last accessed August 19, 2020).

[4]   *Id*.

28.     Thus, the only ways to limit the spread of the virus are self-isolation, social distancing, frequent handwashing, disinfecting of surfaces, and the use of a mask or face covering.

29.     Unfortunately, the COVID-19 health crisis shows no signs of abating. Outbreaks continue to explode around the United States, with a surge in cases linked to the loosening of social distancing requirements in several states.   Many public health experts warn that because of the ease of transmission and lack of vaccine or treatment, a further resurgence of cases in the fall and/or winter is "inevitable."[5] Others believe that resurgences of COVID-19 and continued community transmission will likely continue throughout 2020 and into 2021, including in Puerto Rico.

## II.     COVID-19 in Puerto Rico

30.     While efforts to control the COVID-19 infection rates in Puerto Rico were initially successful, there has been a recent surge in COVID-19 cases.   On March 12, 2020, Puerto Rico Governor Wanda Vázquez-Garced issued an Executive Order (before the confirmation of its first COVID-19 cases) declaring a state of emergency in Puerto Rico and acknowledging that it was "necessary to devise an action plan in conjunction with all the agencies in order to address this emergency

---

[5]   Christina Maxouris, *US Could Be in for 'a Bad Fall and a Bad Winter' If It's Unprepared for a Second Wave of Coronavirus, Fauci Warns*, CNN HEALTH (Apr. 29, 2020), https://rb.gy/xol1oc.

as promptly and efficiently as required."[6]  One day later, on March 13, Puerto Rico confirmed its first three cases of COVID-19.

31.    On March 15, 2020, Governor Vázquez-Garced ordered the closure of public and private nonessential operations, as well as a curfew on all citizens from 9:00 P.M. to 5:00 A.M.[7]  Approximately two weeks later, on March 30, Governor Vázquez-Garced imposed a strict 24-hour, 7 days-a-week lockdown, allowing citizens to leave their homes between 5:00 A.M. and 7:00 P.M. only to receive or provide essential services.[8]

32.    By April, Puerto Rico had fewer cases than any U.S state of a similar size, which health experts attributed to Puerto Rico's broad and swiftly implemented quarantine program.[9]

33.    As a result, on May 21, 2020, Governor Vázquez-Garced passed an Executive Order implementing the phased economic reopening of Puerto Rico,

---

[6]    Executive Order of the Governor of Puerto Rico, Hon. Wanda Vazquez-Garced, OE-2020-020 at 2 (Mar. 12, 2020).

[7]    Executive Order of the Governor of Puerto Rico, Hon. Wanda Vazquez-Garced, OE-2020-023 (Mar. 15, 2020).

[8]    Executive Order of the Governor of Puerto Rico, Hon. Wanda Vazquez-Garced, OE-2020-029 (Mar. 30, 2020).

[9]    Jim Wyss, *Puerto Rico Extends Coronavirus Lockdown through May 3 But Eases Nighttime Curfew*, MIAMI HERALD (April 12, 2020), https://www.miamiherald.com/news/nation-world/world/americas/article241942531.html.

which included the partial reopening of beaches, retail stores and other nonessential businesses, albeit with certain occupancy limits.[10]

34.     On June 12, 2020, the Governor lifted the 24-hour, 7 days-a-week lockdown and established a new, narrower lockdown, from 10:00 P.M. to 5:00 A.M. The Governor also opened beaches to the general public and increased the permitted occupancy for some nonessential businesses.[11]

35.     Shortly after the reopenings, Puerto Rico saw a dramatic spike in the number of COVID-19 cases, with 3,710 confirmed cases in 30 days.[12]  By the end of June, the percentage of positive cases in Puerto Rico had increased ten-fold.[13]

36.     Due to the continued surge in the number of infections on the island, on July 16, 2020, Governor Vázquez-Garced extended the modified lockdown schedule until July 31 and restored a number of restrictions on nonessential businesses.[14]

37.     The increase in infections also prompted other governmental institutions to take additional health and safety measures directed at protecting the

---

[10]   Executive Order of the Governor of Puerto Rico, Hon. Wanda Vazquez-Garced, OE-2020-041 (May 21, 2020).

[11]   Executive Order of the Governor of Puerto Rico, Hon. Wanda Vazquez-Garced, OE-2020-044 (June 12, 2020).

[12]   *Id.*

[13]   Dánica Coto, *Puerto Rico Rolls Back Openings Amid Spike in COVID-19 Cases*, AP News (July   16,   2020),   https://apnews.com/bd17a761945be5900d7c78d79c74369b#:~:text= The%20island%20of%203.2%20million,%2Dfold%2C%20according%20to%20Dr.

[14]   Executive Order of the Governor of Puerto Rico, Hon. Wanda Vazquez-Garced, OE-2020-054 (July 16, 2020).

most vulnerable populations.  On July 21, 2020, Puerto Rico's Health Department (the "Department") issued Administrative Order No. 456, acknowledging that senior citizens are especially at risk of contracting COVID-19, and adopting measures to monitor, prevent and mitigate the spread of COVID-19 in hospices, retirement homes and long-term residences in which senior citizens, among others, live.[15]

38.     On July 31, 2020, Governor Vázquez-Garced passed an Executive Order extending the modified lockdown schedule until August 15, 2020 and added a 24-hour lockdown on Sundays (except to receive or give essential services),[16] which was subsequently extended until August 21.[17]

39.     In response to the rapid increase in cases, on August 19, 2020, the Governor announced extraordinary restrictions, including a full 24-hour lockdown on Sundays except for certain essential purposes, the suspension of public transportation, and fines for violations of mask mandates.[18]

40.     This Court has likewise acknowledged the need for continued public health measures to address the COVID-19 pandemic and has acted accordingly.  On

---

[15]   Administrative Order of the Department of Health of Puerto Rico, OA-456 (July 21, 2020).

[16]   Executive Order of the Governor of Puerto Rico, Hon. Wanda Vázquez-Garced, OE-2020-060 (July 21, 2020).

[17]   Executive Order of the Governor of Puerto Rico, Hon. Wanda Vazquez-Garced, OE-2020-061 (Aug. 15, 2020).

[18]   Executive Order of the Governor of Puerto Rico, Hon. Wanda Vázquez-Garced, OE-2020-062 (Aug. 19, 2020).

March 15, 2020, this Court continued all civil and criminal non-jury trials, hearings, and conferences pending further notice and encouraged the use of video teleconference or teleconferencing services for hearings.[19]   Recently, this Court extended this continuance until September 7, 2020 and cancelled all court-hosted naturalization events scheduled before September 7.[20]   This Court has also mandated mask wearing for all employees and visitors.[21]

## III.   Voting Policies in Puerto Rico

41.    Voting in Puerto Rico is governed by the Código Electoral de Puerto Rico ("Election Code"), which is passed by the Legislative Assembly and signed into law by the governor.   The Election Code is a comprehensive set of rules that aims to facilitate voters' access to the polls, guarantee Puerto Ricans' right to vote and modernize the voting process.   Pursuant to the Election Code, the Commission is in charge of the organization and oversight of elections in Puerto Rico and is tasked with issuing the rules for each election.   Prior to June 20, 2020, when the

---

[19]   Order Concerning Proceedings Before the U.S. District Court of Puerto Rico, *In re Corona Virus (COVID-19) Public Emergency*, Misc. No. 20-088 (Mar. 15, 2020), https://www.prd.uscourts.gov/sites/default/files/Misc.20-88%20Dkt.%203%203.15.2020.pdf.

[20]   Second Amended Order Continuing Civil and Criminal Proceedings, *In re Corona Virus (COVID-19) Public Emergency*, Misc. No. 20-088 (July 17, 2020), https://www.prd.uscourts.gov/sites/default/files/Second%20Amended%20Order%20Extending%20Court%20Closing%20Until%20Sept%207%202020.pdf.

[21]   Notice from the Clerk No. 20-13, *Policy on Mandatory Use of Face Masks or Face Coverings* (May 11, 2020), https://www.prd.uscourts.gov/sites/default/files/documents/notices/Final%20Draft%20Notice%2020-13%20w.%20attach%20May%2011%202020.pdf.

Governor signed into law Election Code 2020, the Election Code had not been updated since 2011.

42.     Under Election Code 2011, there were two very limited alternatives to in-person voting on election day: absentee voting and early voting. Absentee voting was the only mail-in voting option offered to Puerto Rican voters. It also applied to a relatively small population of individuals. To be eligible for absentee voting, one had to be physically outside of Puerto Rico on election day for a particular reason.[22]

43.     Early voting—which still requires the voter to come into contact with others—allows individuals to vote before election day. However, prior to the recent amendment to the Election Code, those qualified for early voting were required to fall within twelve categories, which included certain professions, those under the custody of a penal institution, or admitted to hospitals or treatment centers.[23] Importantly, neither the 2011 nor the 2020 Election Code make exceptions for senior citizens.

---

[22] Accepted reasons to be physically outside of Puerto Rico include personnel on active duty, persons studying in an accredited educational institution, persons working in the Agricultural Employment Program, persons serving the diplomatic or foreign aid of the United States, relatives of those who fall into the aforementioned categories, crewmembers of air or sea carriers, persons confined in penal institutions domiciled in Puerto Rico at the time they were sentenced, employees of the Government of Puerto Rico outside of Puerto Rico on official business, athletes representing Puerto Rico, professionals and their relatives who must remain temporarily outside Puerto Rico, persons domiciled in Puerto Rico whose employers require them to provide services outside of Puerto Rico, and persons undergoing medical treatment outside of Puerto Rico and their relatives. Código Electoral de Puerto Rico (2011), at 130-32.

[23] Id. at 134-35.

15

44.     In response to the COVID-19 outbreak in Puerto Rico, on June 4, 2020, the Legislative Assembly issued a Joint Resolution postponing the date of the primary elections from June 7 to August 9, 2020.[24]  In the Joint Resolution, the Legislative Assembly recognized the potential spread of COVID-19 at voting locations and authorized the Commission to take all necessary measures to ensure the safety and health of the voters for the primaries.  The Joint Resolution also expanded eligibility for early voting for the primaries to include (i) individuals over sixty (60) years of age; (ii) those under quarantine due to testing positive for COVID-19; (iii) individuals with chronic lung diseases or asthma (as verified by a qualified doctor in Puerto Rico), (iv) persons with compromised immune systems (e.g., cancer patients), (v) individuals who are morbidly obese, and (vi) other high risk individuals and/or with vulnerable health conditions, pursuant to the World Health Organization Recommendations.[25]  The Joint Resolution applied only to the primaries and was silent on any accommodations necessary for the general election in November.

45.     Approximately two weeks later, on June 20, 2020, Governor Vázquez-Garced signed into law the Election Code 2020, which officially expanded the categories of people qualified to vote early in the general election to include individuals who are in the hospital or require long-term care, have physical

---

[24]   Section 1, Joint Resolution 556.

[25]   Section 5, Joint Resolution 556.

impediments, medical conditions, or other mobility constraints.  Senior citizens were not included in the expanded categories.  Importantly, however, the Election Code also empowered the Commission to add to (but not subtract from) the listed categories of voters eligible for early voting.

46.     Unlike the Joint Resolution, the Election Code—which applies to the November general election—specifically states that "all of the [listed] categories are eligible for Early Voting or vote by mail."[26]  The Election Code also authorized the Commission to adopt *any* additional measures necessary to ensure the rights of its voters.

## IV.    Puerto Rico's Voting Policies Undermine its Senior Citizens' Access to Voting

47.     To date, the Commission has not announced any protective measures for any voters—let alone senior citizens—for the November 2020 elections.

48.     Any individuals seeking to vote who do not fall within any of the Election Code categories for early or absentee voting must choose between two evils:  they can vote in person in the general election and risk contracting COVID-19, or they can comply with social distancing and best practices and forgo their constitutional right to vote.

---

[26]   Código Electoral de Puerto Rico 2020, Ley Núm. 58-2020 (June 20, 2020), Artículos 9.37.

49.     Given the recent surge of infections on the island, the risk of contracting COVID-19 at voting locations—particularly for those most vulnerable to COVID-19—is far reaching and not speculative.

50.     According to the Census, as of July 1, 2019, more than 20% of Puerto Rico's population—around 790,000 individuals—is sixty-five years old or older.[27] Therefore, hundreds of thousands of senior citizens are at risk of either contracting COVID-19 if forced to vote in person for the general election in November or losing their right to vote entirely.

51.     Voting locations, including those provided in Puerto Rico, are prime areas for increased transmission of COVID-19 due to (i) the close proximity of a large number of individuals in a limited space and (ii) the large number of common surfaces that multiple people touch.

52.     Due to these risks, the CDC has issued guidelines recognizing that "[t]he more an individual interacts with others, and the longer that interaction, the higher the risk of COVID-19 spread."[28]   The CDC recommends that states "offer

---

[27]   U.S. Census Bureau, *Quick Facts: Puerto Rico*, https://www.census.gov/quickfacts/PR (last visited Aug. 19, 2020).

[28]   *Deciding to Go Out*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/deciding-to-go-out.html   (last updated July 30, 2020).

alternative voting methods that minimize direct contact and reduce crowd size polling stations," by adopting, for example, "alternatives to in-person voting."[29]

53.     The danger of large-scale in-person voting during the COVID-19 pandemic is illustrated by the Wisconsin presidential primary election held on April 7, 2020, which drew more than 400,000 in-person voters, owing in part to the state's failure to provide mail ballots with sufficient time for many voters to return them.[30]  In the two weeks following the election, 71 individuals who had either voted in person or worked the polls tested positive for COVID-19.  Even more alarmingly, an analysis by university economists has preliminarily found that, controlling for other potentially relevant factors, Wisconsin counties with more in-person voters per voting location had higher rates of positive COVID-19 tests, while counties with more mail voting had lower positive COVID-19 test rates—patterns that emerged in the weeks following the primary.[31]

54.     These same dangers have already visited Puerto Rico.  During the first week of August, Puerto Rico held its early voting and general voting for its

---

[29]   *Considerations for Election Polling Locations and Voters*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last updated June 22, 2020).

[30]   Chad D. Cotti et al., *The Relationship Between In-Person Voting, Consolidated Polling Locations, and Absentee Voting on COVID-19: Evidence From the Wisconsin Primary*, Working Paper 27187, Nat'l Bureau of Econ. Research (May 2020), https://www.nber.org/papers/w27187.

[31]   *Id.*

primaries.  On August 1 (the day designated for early voting for the primaries), late ballots plagued Puerto Rico's voting locations.  Many counties did not receive ballots until hours later.  With over 21,000 early voters, the late ballots resulted in long and crowded lines filled with the same at-risk communities that early voting was adopted to safeguard.[32]  To address the disenfranchisement that occurred, those unable to vote during the early voting period were allowed to vote on the day of the primary (August 9), with "preferential treatment" and a "fast lane" to be provided to accommodate these voters.[33]  While this accommodation was made to ensure that citizens had an opportunity to exercise their right to vote, it comes at the expense of their health and safety—these voters (those identified as particularly at-risk of exposure by the Legislative Assembly) were forced to travel to polling locations and be exposed to others twice, and come into contact with even larger crowds at the primaries, further increasing their risk of infection.[34]

---

[32] Frances Rosario, *Arranca Con Problemas el Voto Adelantado Para el PNP*, PRIMERA HORA (Aug. 1, 2020), https://www.primerahora.com/noticias/gobierno-politica/notas/arranca-con-problemas-el-voto-adelantado-para-el-pnp/ ("Entre otros problemas, Cruz señaló que en Ceiba las personas sí se le han conglomerado en espera de poder votar, lo que representa un riesgo de contagio. Es que la mayoría de los electores son envejecientes.").

[33] *La CEE Permitirá la Continuación del Voto Adelantado del PNP Durante las Primarias del 9 de Agosto*, EL NUEVO DÍA (Aug. 1, 2020), https://www.elnuevodia.com/noticias/politica/notas/la-cee-permitira-la-continuacion-del-voto-adelantado-del-pnp-durante-las-primarias-del-9-de-agosto/.

[34] Patricia Mazzei, *Botched Primary Election Creates New Crisis in Puerto Rico: 'This Is a Travesty'*, N.Y. TIMES (Aug. 10, 2020), https://www.nytimes.com/2020/08/10/us/puerto-rico-election.html.

55.     Voters who sought to cast their ballots in-person during the August 9, 2020 primaries encountered similarly perilous issues.  Many voters who traveled to polling stations reported waiting in crowded lines for hours, as ballots were delayed in arriving at polling stations.[35]   The delays were so severe that many precincts closed their polling stations early, completely disenfranchising many and resulting in a number of local lawsuits.

56.     In response to a preliminary injunction motion, the Supreme Court of Puerto Rico ultimately found that the "delays and administrative complications" were "the product of the gross negligence of the directors of the Election Commission and the Special Commission for the Primaries" and issued a ruling directing the Commission to resume the primaries on August 16.[36]

57.     The steady increase in COVID-19 coupled with Puerto Rico's failure to implement efficient safety measures at its voting locations, necessitate the adoption of early and absentee voting alternatives for senior citizens for the general elections on November 3.

---

[35]   Cristina Corujo, *Puerto Rico Primaries Turn Chaotic After Ballot Delay, Residents Demand Answers*, ABC NEWS (Aug. 12, 2020), https://abcnews.go.com/Politics/puerto-rico-primaries-turn-chaos-ballot-delay-residents/story?id=72285843.

[36]   *Pedro Pierluisi-Urrutia y Otros* v. *Comisión Estatal de Elecciones*, 2020 PRSC 82, at 3 (P.R. Aug. 12, 2020).

**V.     Defendants' Interests Do Not Justify Denying Senior Citizens Access to Early and Absentee Voting for the November General Election**

58.     Defendants do not have a compelling interest in maintaining the existing early and absentee policies for the general election.  As such, these restrictions are unnecessarily burdensome for Puerto Rico's senior citizens.

59.     Defendants cannot have an interest in maintaining the early and absentee voting restrictions for the general election because the Joint Resolution and the Election Code have already made drastic changes to these policies.  The Joint Resolution, which acknowledged the potential health risks associated with in-person voting, directed the Commission to allow senior citizens and other medically vulnerable individuals, among others, access to early voting for the primaries.  While the current Election Code does not explicitly extend access to early voting to senior citizens, it nevertheless greatly expanded early voting for the general election and authorized the Defendants to further expand the eligible categories as necessary to ensure Puerto Ricans their right to vote.  For the first time, the Election Code also authorized the Defendants to allow early voting to occur by mail.

60.     Any administrative burden in implementing these policy changes for the general election will be minimal.  Since the Joint Resolution significantly increased the number of voters eligible for early voting, the Commission already had to prepare for these accommodations ahead of the primaries.  These protocols and facilities used for the primaries can be easily adopted for the general election, which

22

is still more than two months away.  Similarly, as the Election Code expanded the number of the persons eligible for absentee (mail-in) voting for the general election, the Commission will also have to prepare for this increase in mail-in votes and can address any concerns regarding senior citizens' access to vote by mail during this process.

61.     Even if expanding early and absentee voting were not already part of the Commission's legal mandate, none of the anticipated administrative burdens justify the deprivation of Puerto Rico's senior citizens' constitutional right to vote in the general election.

62.     Unfortunately, despite the Governor and Legislative Assembly's clear instruction to take the actions necessary to protect the health and safety of its voters, the Commission has failed to take *any* action to ensure that Puerto Rico's senior citizens can exercise their constitutional right to vote without jeopardizing their own, their families', and/or their community's health for the general election.

## CAUSE OF ACTION

**Undue Burden on the Right to Vote in Violation of the First and Fourteenth Amendments As Applied to Elections During the COVID-19 Pandemic**
(42 U.S.C. § 1983)

63.     Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

64.     Eligible individuals have a fundamental right to vote under the First and Fourteenth Amendments of the U.S. Constitution.  As an initial matter, "it is clear that the voting rights of Puerto Rico citizens are constitutionally protected to the same extent as those of all other citizens of the United States." *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 8 (1982).  The constitutional right to vote "is of the most fundamental significance under our constitutional structure." *Burdick* v. *Takushi*, 504 U.S. 428, 433 (1992).  When analyzing the constitutionality of a restriction on voting, the Court must "weigh the 'character and magnitude of the asserted injury to' the voters' rights against the 'precise interests put forward by the State as justifications for the burden imposed.'" *Common Cause R.I.* v. *Gorbea*, No. 20-1753, --- F.3d ---, 2020 WL 4579367, at *1 (1st Cir. Aug. 7, 2020) (quoting *Anderson* v. *Celebrezze*, 460 U.S. 780, 789 (1983)).

65.     In light of the COVID-19 pandemic, Puerto Rico's voting policies and restrictions on early and absentee voting, as applied to the November 2020 general election, constitute a severe burden on senior citizens' right to vote.  These requirements will likely prevent thousands of eligible senior citizens from casting ballots during the general election because it will force them to choose between exercising their constitutional right to vote safely or violating social distancing guidelines and exposing themselves, their families, and their communities to contracting COVID-19.

66.     Puerto Rico has no interest sufficient to justify not expanding access to early and absentee voting to its senior citizens.  Indeed, the Legislative Assembly already expanded early voting to senior citizens for the primaries and the newly enacted Election Code (for the first time) affirmatively allows for early voting to be completed by mail for the general election.  Any administrative burden associated with implementing these accommodations for the general election pales in comparison to the severe burden imposed by the current voting policies on its senior citizens during the pandemic.

67.     Therefore, Defendants, acting under color of the law, have and will continue to deprive Plaintiffs of rights secured to them by the First and Fourteenth Amendments to the U.S. Constitution—namely, the fundamental right to vote—and protected by 42 U.S.C. § 1983 by enforcing the challenged restrictions to early and absentee voting.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Enter a declaratory judgment that the Commission's failure to allow senior citizens (individuals over sixty (60) years of age, as defined by the Legislative Assembly) access to early and absentee voting for the general election in November, in the midst of a deadly pandemic, violates the First and Fourteenth Amendments;

2.     Enter temporary, preliminary, and permanent injunctions directing Defendants, their agents, employees, and successors, and all those persons acting in concert or participation with them to implement policies allowing senior citizens to safely vote in the November 2020 general election, by:

(a)     Identifying voters over sixty years of age as individuals eligible to vote by *voto adelantado* during the pendency of the COVID-19 pandemic;

(b)     Identifying voters over sixty years of age as individuals eligible to vote by *voto ausente* (mail-in ballot) during the pendency of the COVID-19 pandemic; and

(c)     Updating all public education materials, including written, online, and on-air, to reflect the above eligibility rules.

3.     Grant such other relief as the Court may deem just and proper.

Dated: August 20, 2020

Respectfully submitted,

/s/ Fermín L. Arraiza-Navas
Fermín L. Arraiza-Navas
#215705
farraiza@aclu.org
(787) 966-3133

Mayté Bayolo-Alonso*
mbayalo@aclu.org
(787) 448-5544

American Civil Liberties Union
of Puerto Rico
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
(787) 753-9493

*Of Counsel

Adriel I. Cepeda Derieux**
Dale E. Ho**
Theresa J. Lee**
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
acepedaderieux@aclu.org
dho@aclu.org
tlee@aclu.org

Jaren Janghorbani**
Lissette A. Duran**
Makiko Hiromi**
Juan Gascon**

Paul, Weiss, Rifkind, Wharton &
  Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
jjanghorbani@paulweiss.com
lduran@paulweiss.com
mhiromi@paulweiss.com
jgascon@paulweiss.com

**Pro hac vice* application
forthcoming