## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BELIA ARLENE OCASIO and EFRAÍN COLÓN DAMIANI,<br><br>*Plaintiffs*,<br><br>v.<br><br><br>COMISIÓN ESTATAL DE ELECCIONES and JUAN DÁVILA-RIVERA, in his official capacity as President of the Comisión Estatal de Elecciones,<br><br>*Defendants*. | **TEMPORARY RESTRAINING ORDER REQUESTED**<br><br><br><br>Civil Action No. |

## NOTICE OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 65, Plaintiffs, by and through their undersigned counsel, hereby move for the issuance of a Temporary Restraining Order and, after hearing thereon, a Preliminary Injunction, directing Defendants to expand the eligibility for early and mail-in voting to include senior citizens.  Plaintiffs, by and through their undersigned counsel, request a Temporary Restraining Order conference, and, if the requested relief is contested by Defendants, Plaintiffs request an evidentiary hearing on the Preliminary Injunction.

In support of the Motion, Plaintiffs rely upon the Complaint and the attached supporting Memorandum of Fact and Law, as well as the exhibits thereto, including the declarations of Plaintiffs Belia Arlene Ocasio and Efraín Colón Damiani, Dr. Arthur L. Reingold, and Dr. María Ortiz Tapia.

Dated: August 20, 2020
          San Juan, Puerto Rico

Respectfully submitted:

/s/ Fermín L. Arraiza-Navas
Fermín L. Arraiza-Navas
#215705
farraiza@aclu.org
(787) 966-3133

Mayté Bayolo-Alonso*
mbayolo@aclu.org
(787) 448-5544

American Civil Liberties Union
of Puerto Rico
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
(787) 753-9493

*Of Counsel

Adriel I. Cepeda Derieux**
Dale E. Ho**
Theresa J. Lee**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
acepedaderieux@aclu.org
dho@aclu.org
tlee@aclu.org

Jaren Janghorbani**
Lissette A. Duran**
Makiko Hiromi**
Juan Gascon**
Paul, Weiss, Rifkind, Wharton &
   Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
jjanghorbani@paulweiss.com
lduran@paulweiss.com
mhiromi@paulweiss.com
jgascon@paulweiss.com
**Pro hac vice application forthcoming

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BELIA ARLENE OCASIO and EFRAÍN COLÓN DAMIANI, <br><br> *Plaintiffs*, <br><br> v. <br><br><br> COMISIÓN ESTATAL DE ELECCIONES and JUAN DÁVILA-RIVERA, in his official capacity as President of the Comisión Estatal de Elecciones, <br><br> *Defendants*. | Civil Action No. |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY AND INJUNCTIVE RELIEF**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................. ii

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................... 2

       A.     THE COVID-19 PANDEMIC ....................................................................... 2

       B.     THE SPREAD OF COVID-19 IN PUERTO RICO AND PUERTO
              RICO'S PUBLIC HEALTH RESPONSE ........................................................ 4

       C.     PUERTO RICO'S COMISION ESTATAL DE ELECCIONES,
              PRIMARY, AND GENERAL ELECTIONS ................................................... 5

       D.     EXPANSION OF EARLY AND ABSENTEE VOTING .................................... 7

       E.     THE PUBLIC HEALTH AND DISENFRANCHISEMENT
              CONSEQUENCES OF PUERTO RICO'S FAILURE TO IMPLEMENT
              VOTE BY MAIL FOR SENIOR CITIZENS DURING THE COVID-19
              PANDEMIC ................................................................................................. 8

       F.     INJURIES AND IRREPARABLE HARM TO PLAINTIFFS ........................... 11

III.   ARGUMENT ........................................................................................................ 12

       A.     Legal Standards .......................................................................................... 12

              1.     Preliminary Injunction ..................................................................... 12

              2.     The Anderson-Burdick Framework .................................................. 13

       B.     The First and Fourteenth Amendment Require That Early Voting and
              Mail-In Voting Be Provided for Senior Citizens During the Pendency of
              the COVID-19 Pandemic ............................................................................. 14

              1.     Plaintiffs are likely to prevail on the merits of their constitutional
                     claims. ........................................................................................... 14

       C.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT
              INJUCTIVE RELIEF .................................................................................... 22

       D.     THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST
              SUPPORT INJUNCTIVE RELIEF ................................................................ 23

IV.    CONCLUSION ..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Acosta* v. *Pablo Restrepo*,
   No. 1:20-CV-00262-MSM-LDA, 2020 WL 3495777 (D.R.I. June 25, 2020) .......................21

*Asociación de Educación Privada de P.R.* v. *García-Padilla*,
   490 F.3d 1, 21 (1st Cir. 2007) .................................................................................................22

*Ayers-Schaffner* v. *DiStefano*,
   860 F. Supp. 918 (D.R.I. 1994) ...............................................................................................13

*Barr* v. *Galvin*,
   626 F.3d 99 (1st Cir. 2010) ...............................................................................................13, 19

*Burdick* v. *Takushi*,
   504 U.S. 428 (1992) .................................................................................................................13

*Common Cause R.I.* v. *Gorbea*,
   --- F.3d ---, No. 20-1753, 2020 WL 4579367 (1st Cir. Aug. 7, 2020).........................14, 18, 24

*Crawford* v. *Marion County Election Bd.*,
   553 U.S. 181 (2008) .................................................................................................................14

*Elrod* v. *Burns*,
   427 U.S. 347 (June 28, 1976) ..................................................................................................22

*Fla. Democratic Party* v. *Scott*,
   215 F. Supp. 3d 1250 (N.D. Fla. 2016).....................................................................................22

*Frank* v. *Walker*,
   819 F.3d 384 (7th Cir. 2016) ...................................................................................................13

*Fusaro* v. *Cogan*,
   930 F.3d 241 (4th Cir. 2019) ...................................................................................................14

*I.P. Lund Trading AS* v. *Kohler Co.*,
   163 F.3d 27 (1st Cir. 1998).......................................................................................................12

*Jones* v. *Governor of Fla.*,
   950 F.3d 795 (11th Cir. 2020) .................................................................................................22

*League of Women Voters of N.C.* v. *North Carolina*,
   769 F.3d 224 (4th Cir. 2014) ........................................................................................16, 22, 24

*League of Women Voters of Va.* v. *Va. State Bd. of Elections*,
   No. 6:20-CV-00024, 2020 WL 2158249 (W.D. Va. May 5, 2020)...................................18, 21

*Libertarian Party of Ill.* v. *Pritzker*,
   2020 WL 1951687 (N.D. Ill. Apr. 23, 2020) ........................................................................21

*Libertarian Party of N.H.* v. *Sununu*,
   No. 20-CV-688-JL, 2020 WL 4340308 (D.N.H. July 28, 2020) ...........................................24

*McLaughlin* v. *N.C. Bd. of Elections*,
   65 F.3d 1215 (4th Cir. 1995) ................................................................................................14

*Ne. Ohio Coal. For Homeless* v. *Husted*,
   696 F.3d 580 (6th Cir. 2012) ................................................................................................16

*Obama for Am.* v. *Husted*,
   697 F.3d 423 (6th Cir. 2012) ...........................................................................................22, 24

*One Wis. Inst., Inc.* v. *Thomsen*,
   198 F. Supp. 3d 896 (W.D. Wis. 2016) order enforced, 351 F. Supp. 3d 1160
   (W.D. Wis. 2019) ...................................................................................................................13

*Paher* v. *Cegavske*,
   No. 320CV00243, 2020 WL 2089813 (D. Nev. Apr. 30, 2020) ...........................................24

*Pedro Pierluisi-Urrutia y Otros* v. *Comisión Estatal de Elecciones*,
   2020 PRSC 82, (P.R. Aug. 12, 2020) .........................................................................11, 20, 23

*People First of Ala.* v. *Merrill*,
   No. 20-12184, 2020 WL 3207824 (N.D. Ala. June 15, 2020)...............................................21

*People First of Ala.* v. *Sec'y of State for Ala.*,
   No. 20-12184, 2020 WL 3478093 (11th Cir. June 25, 2020)..........................................21, 23

*Price* v. *N.Y. State Bd. of Elections*,
   540 F.3d 101 (2d Cir. 2008)..................................................................................................14

*Rodriguez* v. *Popular Democratic Party*
   457 U.S. 1 (1982)..................................................................................................................13

*Saucedo* v. *Gardner*,
   335 F. Supp. 3d 202 (D.N.H. 2018)......................................................................................16

*Sindicato Puertorriqueño de Trabajadores* v. *Fortuño*,
   699 F.3d 1 (1st Cir. 2012)......................................................................................................12

*Thakker* v. *Doll*,
   No. 1:20-CV-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020) ...................................22, 25

*Thomas* v. *Andino*,
   No. 3:20-CV-01552-JMC, 2020 WL 2617329 (D.S.C. May 25, 2020) ....................18, 21, 24

*Werme* v. *Merrill*,
    84 F.3d 479 (1st Cir. 1996)........................................................................................13

*Williams* v. *Salerno*,
    792 F.2d 323 (2d Cir. 1986)......................................................................................22


**STATUTES AND LEGISLATIVE ACTS**

Código Electoral de Puerto Rico 2011, Ley Núm. 78-2011 (June 1, 2011),
    Artículo 9.039. ............................................................................................................7

Código Electoral de Puerto Rico 2020, Ley Núm. 58-2020 (June 20, 2020),
    Artículos 9.36, 9.37.................................................................................................8, 20

Resolución Conjunta Núm. 37, R.C. del S. 556 (June 4, 2020) ...........................6, 8, 20


**OTHER AUTHORITIES**

Administrative Bulletin No. OE-2020-020 (March 12, 2020)..........................................4

Administrative Bulletin No. OE-2020-023 (March 15, 2020)..........................................4

Administrative Bulletin No. OE-2020-029 (March 30, 2020)..........................................4

Administrative Bulletin No. OE-2020-033 (April 12, 2020)............................................4

Administrative Bulletin No. OE-2020-038 (May 1, 2020)...............................................4

Administrative Bulletin No. OE-2020-041 (May 21, 2020).............................................4

Administrative Bulletin No. OE-2020-054 (July 16, 2020) ............................................5

Administrative Bulletin No. OE-2020-062 (August 19, 2020).........................................5

Aiola Virella, *Cierre de Escuelas Limitará los Centros de Votación*, METRO (Feb.
    21, 2020), https://www.metro.pr/pr/noticias/2020/02/21/cierre-escuelas-
    limitara-los-centros-votacion.html..........................................................................17

Apoorva Mandavilli, *Actual Coronavirus Infections Vastly Undercounted, C.D.C.
    Data Shows*, N.Y. TIMES (June 27, 2020)................................................................2

*Cases in the U.S.*,
    CENTERS FOR DISEASE CONTROL AND PREVENTION,
    https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html
    (last visited August 19, 2020) ...................................................................................2

Chad D. Cotti et al., *The Relationship Between In-Person Voting, Consolidated Polling Locations, and Absentee Voting on COVID-19: Evidence From the Wisconsin Primary*, Working Paper 27187, NAT'L BUREAU OF ECON. RESEARCH (May 2020), https://www.nber.org/papers/w271877 ............................................25

Christina Maxouris, *US Could Be in for 'A Bad Fall and a Bad Winter' If It's Unprepared for a Second Wave of Coronavirus, Fauci Warns*, CNN HEALTH (Apr. 29, 2020), https://rb.gy/xol1oc ........................................................................................4

*Citizen Voting-Age Population: Puerto Rico*, UNITED STATES CENSUS BUREAU (Nov. 15, 2016), https://www.census.gov/library/visualizations/2016/comm/citizen_voting_age_population/cb16-tps18_pr.html ...........................................................................15

*Clinical Management of Severe Acute Respiratory Infection (SARI) when COVID-19 Disease is Suspected*, WORLD HEALTH ORGANIZATION (Mar. 13, 2020), https://www.who.int/docs/default-source/coronaviruse/clinical-management-of-novel-cov.pdf..........................................................................................................17

Comisión Estatal de Elecciones de Puerto Rico, Educación Electoral, http://209.68.12.238/servicioCEE/educacionElectoral/index.htm (last visited Aug. 19, 2020) ...........................................................................................................6

Comisión Estatal de Elecciones de Puerto Rico, *Informe Estadístico: Elecciones Generales, 8 de Noviembre 2016*, Part 1, http://ww2.ceepur.org/sites/ComisionEE/es-pr/Documents/Informe%20Estadistico%20EG2016%20-%20Parte1.pdf........................17, 18

Comisión Estatal de Elecciones de Puerto Rico, *Informe Estadístico: Elecciones Generales, 8 de Noviembre 2016*, Part 2, http://ww2.ceepur.org/sites/ComisionEE/es-pr/Documents/Informe%20Estadistico%20EG2016%20-%20Parte2.pdf (showing Puerto Rico's voter turnout since 1900) ......................................9, 15, 18

*Considerations for Election Polling Locations and Voters*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last updated June 22, 2020)................................................................9

*Deciding to Go Out*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/deciding-to-go-out.html (last updated July 30, 2020)........................................................................9

Donald G. McNeil Jr., *The Pandemic's Big Mystery: How Deadly is the Coronavirus?*, N.Y. TIMES (July 4, 2020) (last updated Aug. 7, 2020)....................................2

Dr. Anthony Fauci & Dr. Robert Redfield, Senate Testimony Transcript, at
   02:08:04 (May 12, 2020), https://perma.cc/8ARJ-YWNS .......................................................3

Frances Rosario, *Arranca Con Problemas el Voto Adelantado Para el PNP*,
   PRIMERA HORA (Aug. 1, 2020),
   https://www.primerahora.com/noticias/gobierno-politica/notas/arranca-con-
   problemas-el-voto-adelantado-para-el-pnp/ ............................................................10

*How COVID-19 Spreads*,
   CENTERS FOR DISEASE CONTROL AND PREVENTION,
   https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-
   spreads.html (last updated June 16, 2020) .................................................................3

*How to Protect Yourself & Others*,
   CENTERS FOR DISEASE CONTROL AND PREVENTION,
   https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-
   sick/prevention.html (last updated July 31, 2020) ..................................................3

*Indicator Platform*, PUERTO RICO INSTITUTE OF STATISTICS,
   https://estadisticas.pr/en/covid-19 ............................................................................4, 5

Jonathan M. Wortham et al., *Morbidity And Mortality Weekly Report:
   Characteristics of Persons who Died with COVID-19—United States,
   February 12–May 18, 2020*, CENTERS FOR DISEASE CONTROL AND
   PREVENTION (July 17, 2020),
   https://www.cdc.gov/mmwr/volumes/69/wr/mm6928e1.htm?s_cid=mm6928e
   1_w..............................................................................................................................17

*La CEE Permitirá la Continuación del Voto Adelantado del PNP Durante las
   Primarias del 9 de Agosto*, EL NUEVO DÍA (Aug. 1, 2020),
   https://www.elnuevodia.com/noticias/politica/notas/la-cee-permitira-la-
   continuacion-del-voto-adelantado-del-pnp-durante-las-primarias-del-9-de-
   agosto/ .........................................................................................................................10

Lazaro Gamio, *How Coronavirus Cases Have Risen Since States Reopened*, N.Y.
   TIMES (July 9, 2020) ....................................................................................................4

Marie E. Killerby et al., *Morbidity and Mortality Weekly Report: Characteristics
   Associated with Hospitalization Among Patients with COVID-19—
   Metropolitan Atlanta, March–April 2020*, CENTERS FOR DISEASE CONTROL
   AND PREVENTION (June 26, 2020),
   https://www.cdc.gov/mmwr/volumes/69/wr/mm6925e1.htm .................................17

National Conference of State Legislatures, *VOPP: Table 2: Excuses to Vote
   Absentee* (April 20, 2020), https://www.ncsl.org/research/elections-and-
   campaigns/vopp-table-2-excuses-to-vote-absentee.aspx ........................................20

Nicole Acevedo, *Puerto Rico's Chaotic and Unfinished Primary Spurs Voter*
*Suppression Concerns*, NBC NEWS (Aug. 12, 2020),
https://www.nbcnews.com/news/latino/puerto-rico-s-chaotic-unfinished-
primaries-spur-voter-suppression-concerns-n1236393.......................................................6, 10

*Older Adults*,
CENTERS FOR DISEASE CONTROL AND PREVENTION,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-
adults.html (last updated Aug. 16, 2020).......................................................16, 17

Patricia Mazzei, *Botched Primary Election Creates a New Crisis in Puerto Rico:*
*'This Is a Travesty,'* N.Y. TIMES (Aug. 10, 2020) ...................................................10

*People with Certain Medical Conditions*,
CENTERS FOR DISEASE CONTROL AND PREVENTION,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-
with-medical-conditions.html (last updated July 30, 2020)........................................17

*Puerto Rico Coronavirus Case Count*, N.Y. TIMES,
https://www.nytimes.com/interactive/2020/us/puerto-rico-coronavirus-
cases.html (last updated Aug. 19, 2020) .................................................................5

*QuickFacts: Puerto Rico*, UNITED STATES CENSUS BUREAU (July 1, 2019),
https://www.census.gov/quickfacts/PR.....................................................................10

*Resume Primary After Ballot Shortage Suspension*, NBC NEWS (Aug. 12, 2020),
https://www.nbcnews.com/news/latino/puerto-rico-ordered-resume-primary-
after-ballot-shortage-suspension-n1236560................................................................6

*Sobre 21 Mil Electores del PNP Votan Adelantado Hoy Para Las Primarias*,
WAPA TV: DECISIÓN 2020 (Aug. 1, 2020),
https://sites.wapa.tv/decision2020/sobre-21-mil-electores-del-pnp-votan-
adelantado-hoy-para-las-primarias/ ........................................................................18

*Under Pressure from Scientists Globally, the W.H.O. Acknowledges That the*
*Virus Can Linger in the Air Indoors*, N.Y. TIMES (July 9, 2020) (last updated
July 23, 2020)...........................................................................................................3

*World Health Organization Coronavirus Disease (COVID-19) Dashboard*,
WORLD HEALTH ORGANIZATION, https://covid19.who.int/ (last visited August
19, 2020) .................................................................................................................2

## I.   INTRODUCTION

Puerto Rico's restrictive *voto adelantado* ("early voting") and *voto ausente* ("absentee voting") policies will force senior citizens and those with underlying health conditions to choose between two irreparable harms in November: violating public health social distancing and safety guidelines designed to protect them and their loved ones, or foregoing their fundamental right to vote in the general elections.  In the midst of a deadly pandemic, this burden is not only unduly severe, it also serves no legitimate state interest and is therefore unconstitutional.

The continued rise in COVID-19 infections in Puerto Rico amplifies the need to provide safe voting alternatives to its senior citizens, who are at particularly high risk of serious illness or death should they contract the virus.  Puerto Rico currently has a seven-day average transmission rate of over 500 new confirmed cases a day.  Given the prevalence of COVID-19 on the island, the likelihood that COVID-19 will spread at Puerto Rico's voting locations—prime breeding grounds for the virus—is incredibly high.  Indeed, Puerto Rico's recent primaries provide a perfect example of this risk: voters were forced to stand in line for hours in enclosed spaces and some even made multiple trips to their voting locations, unnecessarily increasing their contact with others.  Under the current voting rules, Puerto Rico's senior citizens will have no option but to again subject themselves to these conditions in order to exercise their right to vote in the general elections.  This burden is unconstitutionally severe.

Meanwhile, Defendants *Comisión Estatal de Elecciones de Puerto Rico* (the "Commission") and Commission President, Juan Dávila-Rivera, have little to no interest in maintaining the existing policies.  In fact, Puerto Rico has already empowered the Commission to implement accommodations to keep citizens safe for the elections, including access to early and absentee voting, through a Joint Resolution of the Legislative Assembly for the primaries and an updated Election Code applicable to the general elections.  Thus, an injunction will merely require

the Commission to fulfill its existing legal mandate and implement for the general elections the changes made for the primaries and allowed for by the Election Code.

Furthermore, the public's interests in ensuring its citizens their constitutional right to vote and safeguarding public health and preventing the spread of the virus are served by an injunction. Allowing senior citizens access to early and absentee voting will not only ensure that senior citizens can exercise their right to vote safely, but it will also reduce crowding at voting locations during the general elections and decrease the risk of infection for all.

Plaintiffs therefore request that the Court grant a preliminary injunction directing Defendants to adopt policies permitting senior citizens access to early and absentee voting for the November general elections.

## II.    FACTUAL BACKGROUND

### A.    THE COVID-19 PANDEMIC

COVID-19 has spread to millions and claimed hundreds of thousands of lives.  As of August 19, 2020, there have been 21,989,366 confirmed cases globally.[1]  According to the World Health Organization ("WHO"), approximately 20% of those infected "become ill enough to need supplemental oxygen or even more advanced hospital care."[2]  In the United States alone, 5,460,429 cases have been confirmed as of August 19, 2020, of which 171,012 cases have resulted in death.[3]  Due to limitations in testing and the number of asymptomatic individuals, these numbers doubtless understate the actual number of cases.[4]

SARS-CoV-2, the virus that causes COVID-19, spreads readily from person-to-person

---

[1]   *World Health Organization Coronavirus Disease (COVID-19) Dashboard*, WORLD HEALTH ORGANIZATION, https://covid19.who.int/ (last visited August 19, 2020).

[2]   Donald G. McNeil Jr., *The Pandemic's Big Mystery:  How Deadly is the Coronavirus?*, N.Y. TIMES (July 4, 2020), https://www.nytimes.com/2020/07/04/health/coronavirus-death-rate.html (last updated Aug. 7, 2020).

[3]   *Cases in the U.S.*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited August 19, 2020).

[4]   Apoorva Mandavilli, *Actual Coronavirus Infections Vastly Undercounted, C.D.C. Data Shows*, N.Y. TIMES (June 27, 2020), https://perma.cc/SX7E-DMF2.

through respiratory transmission.  Declaration of Dr. Arthur L. Reingold ("Reingold Decl.") ¶ 9 (attached hereto as Exhibit A).[5]  Those infected with the virus may transmit it to others without ever showing symptoms themselves.[6]  Although transmission is believed to most commonly occur through close proximity with an infected person who expels droplets when they speak, cough, or sneeze, infection may also occur by inhaling aerosolized droplets containing the virus that remain in the air.  *Id.* at ¶ 9.[7]  The virus can also be transmitted through contact with a contaminated surface.  *Id.*  While people of all ages have contracted and died from COVID-19, older individuals and individuals with conditions like hypertension, diabetes, and heart disease are at particularly high risk of severe cases, long-term impairment, and death.  *Id.* at ¶ 7.

To reduce the spread of the virus, the Centers for Disease Control recommends several measures, including staying at home, maintaining a distance of at least six feet from others, and wearing a mask in public places.[8]  Public health experts have cautioned against prematurely ending social distancing and other safety measures, warning that the absence of adequate protections "will have the deleterious consequence of more infections and more deaths."[9]

Unfortunately, the COVID-19 health crisis shows no signs of abating.  Outbreaks continue to explode around the United States, with a surge in cases linked to the attempt to scale back previous restrictions on contact among the population with the goal of re-opening the economies

---

[5]  *See also, How COVID-19 Spreads*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last updated June 16, 2020).

[6]  *Id.*

[7]  As of July 9, 2020, the World Health Organization also confirms that "droplets carrying the coronavirus may be airborne indoors and that people who spend long periods in crowded settings with inadequate ventilation may be at risk of becoming infected."  *Under Pressure from Scientists Globally, the W.H.O. Acknowledges That the Virus Can Linger in the Air Indoors*, N.Y. TIMES (July 9, 2020), https://rb.gy/ba45tu (last updated July 23, 2020).

[8]  *How to Protect Yourself & Others*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated July 31, 2020).

[9]  Dr. Anthony Fauci & Dr. Robert Redfield, Senate Testimony Transcript, at 02:08:04 (May 12, 2020), https://perma.cc/8ARJ-YWNS.

in several states.[10]  Many public health experts warn that a further resurgence of cases in the fall and/or winter is "inevitable."[11]  Dr. Arthur L. Reingold, an expert in epidemiology and infectious diseases and Division Head of Epidemiology and Biostatistics at the University of California, Berkeley, School of Public Heath, advises that resurgences of COVID-19 and continued community transmission will likely continue throughout 2020 and into 2021, including in Puerto Rico.  Reingold Decl. at ¶ 16.

### B.   THE SPREAD OF COVID-19 IN PUERTO RICO AND PUERTO RICO'S PUBLIC HEALTH RESPONSE

Recognizing the public health risks of the COVID-19 pandemic, Puerto Rico Governor Wanda Vázquez-Garced issued an Executive Order on March 12, 2020 declaring a state of emergency.[12]  Puerto Rico confirmed its first three cases of COVID-19 the following day on March 13, 2020.[13]  Through two executive orders issued on March 15 and 30, 2020, Governor Vázquez-Garced ordered the closure of all non-essential businesses and imposed a lockdown requiring that all citizens remain at home except for certain essential purposes between 5 am and 7 pm.[14]  These measures were extended, with minor modifications as to times and permitted activities until June 12, 2020.[15]  Under these stay-home orders, Puerto Rico identified an average of 69 new cases per

---

[10]   Lazaro Gamio, *How Coronavirus Cases Have Risen Since States Reopened*, N.Y. TIMES (July 9, 2020), https://www.nytimes.com/interactive/2020/07/09/us/coronavirus-cases-reopening-trends.html.   *See also* Reingold Decl. ¶ 16.

[11]   Christina Maxouris, *US Could Be in for 'A Bad Fall and a Bad Winter' If It's Unprepared for a Second Wave of Coronavirus, Fauci Warns*, CNN HEALTH (Apr. 29, 2020), https://rb.gy/xol1oc.

[12]   Administrative Bulletin No. OE-2020-020 (March 12, 2020).

[13]   *COVID-19 Indicator Platform*, PUERTO RICO INSTITUTE OF STATISTICS, https://estadisticas.pr/en/covid-19 (last visited Aug. 19, 2020).

[14]   Administrative Bulletin No. OE-2020-023 (March 15, 2020); Administrative Bulletin No. OE-2020-029 (March 30, 2020).

[15]   Administrative Bulletin No. OE-2020-033 (April 12, 2020) (extending lockdown through May 3, 2020); Administrative Bulletin No. OE-2020-038 (May 1, 2020) (extending lockdown through May 25, 2020, while permitting certain sectors to reopen); Administrative Bulletin No. OE-2020-041 (May 21, 2020) (extending lockdown through June 15, 2020, while permitting certain businesses to reopen, with restrictions).

day between March 13, 2020 and June 28, 2020, accumulating a total of 7,686 cases by June 30.[16]

On June 12, 2020, the general lockdown was lifted and replaced with a "new lockdown" permitting citizens to be out of their homes during the day and allowing certain non-essential businesses to reopen under specific guidelines.[17]  Within a month of the modified order, Puerto Rico saw a dramatic spike in cases, averaging 123 new confirmed cases a day.[18]  In light of this spike, on July 16, 2020, the governor restored some of the restrictive measures that had been lifted by the June 12, 2020 order, and extended the "new lockdown."[19]  However, Puerto Rico had 9,316 new COVID-19 cases in the month of July alone, reaching a total of 17,002 cases by July 31.[20] Since then, the numbers have only increased further, with a seven-day average of over 500 cases a day since August 7.[21]  As noted by Dr. María Ortiz Tapia, a Puerto Rican gerontologist, given the shortage of tests in Puerto Rico, the actual number of cases is almost certainly much higher. Declaration of María Ortiz Tapia ("Tapia Decl.") ¶ 8 (attached hereto as Exhibit B).  In response to the rapid increase in cases, on August 19, 2020, the governor announced further restrictions, including a full 24-hour lockdown on Sundays except for certain essential purposes, the suspension of public transportation, and fines for violations of mask mandates.[22]

### C.    PUERTO RICO'S COMISION ESTATAL DE ELECCIONES, PRIMARY, AND GENERAL ELECTIONS

The *Comisión Estatal de Elecciones de Puerto Rico* (the "Commission") was created for

---

[16]   *Puerto Rico Coronavirus Case Count*, N.Y. Times, https://www.nytimes.com/interactive/2020/us/puerto-rico-coronavirus-cases.html (last visited Aug. 19, 2020); *see also* Tapia Decl. ¶ 7.

[17]   Administrative Bulletin No. OE-2020-044 (June 12, 2020).

[18]   *COVID-19 Indicator Platform*, Puerto Rico Institute of Statistics, https://estadisticas.pr/en/covid-19 (last visited Aug. 19, 2020).

[19]   Administrative Bulletin No. OE-2020-054 (July 16, 2020).

[20]   *Puerto Rico Coronavirus Case Count*, N.Y. Times, https://www.nytimes.com/interactive/2020/us/puerto-rico-coronavirus-cases.html (last visited Aug. 19, 2020); *see also* Tapia Decl. ¶ 7.

[21]   *Id.*

[22]   Administrative Bulletin No. OE-2020-062 (August 19, 2020).

the purpose of ensuring that all elections are accessible, efficient, transparent, and prompt.  To that end, the Commission is entrusted with overseeing the election process, including updating voting policies as necessary, facilitating registration services, and organizing voting poll locations and ballots.[23]  The Commission's policies are informed by the Election Code and any regulations promulgated by the Legislative Assembly.  After any elections are held in Puerto Rico, the Commission releases statistical reports providing a detailed breakdown of the voting population and election results.

On August 9, 2020, Puerto Rico held its primary elections, during which voters affiliated with the relevant parties elected delegates for the Popular Democratic Party and the New Progressive Party.  Early voting was available only on August 1.  Originally scheduled for June 7, the primary election day was postponed by the Legislative Assembly through the passing of a Joint Resolution as a result of the dangers posed by COVID-19.[24]  The Joint Resolution acknowledged the devastation that the COVID-19 pandemic had caused and directed the Commission to use the additional time to implement necessary social distancing and safety measures.

The August 9 elections were marred by extensive and well-publicized problems, stemming primarily from a lack of ballots at voting precincts across the island.  As a result, multiple lawsuits were filed in Puerto Rico courts, including by multiple candidates from each of Puerto Rico's two major parties.[25]  On August 12, 2020, the Supreme Court of Puerto Rico ordered a second primary day to be held on August 16, 2020, for any polling sites that either were not open for the entirety of the eight hours required by the Election Code, or never opened at all.[26]

---

[23]   Comisión    Estatal    de    Elecciones    de    Puerto    Rico,    Educación    Electoral, http://209.68.12.238/servicioCEE/educacionElectoral/index.htm (last visited Aug. 19, 2020).

[24]   Resolución Conjunta Núm. 37, R.C. del S. 556 (June 4, 2020).

[25]   Nicole Acevedo, *Puerto Rico Ordered to Resume Primary After Ballot Shortage Suspension*, NBC NEWS (Aug. 12, 2020), https://www.nbcnews.com/news/latino/puerto-rico-ordered-resume-primary-after-ballot-shortage-suspension-n1236560.

[26]   *Id.*

On November 3, 2020, Puerto Rico will hold its general elections in which citizens will elect the governor, the representatives for the Senate and House of Representatives, the resident commissioner and the mayors of Puerto Rico.

### D.   EXPANSION OF EARLY AND ABSENTEE VOTING

The COVID-19 pandemic has forced Puerto Rico to reevaluate its severely restrictive voting policies.  As of June 2020, Puerto Rico only allowed early voting for limited categories of individuals, such as certain government employees working on election day.[27]  These rules made no exceptions for senior citizens or voters with conditions preventing them from appearing at their polling locations to vote in person.  Absentee voting was similarly limited and only allowed for those who live in Puerto Rico, but happened to be outside of the island on the day of the elections for a limited number of reasons.[28]

In light of the pandemic, however, the Legislative Assembly's Joint Resolution expanded the categories of individuals eligible for early voting to include (i) individuals over sixty (60) years of age (hereinafter, "senior citizens"); (ii) those under quarantine due to a positive COVID-19 test; (iii) those with chronic lung diseases or asthma (as verified by a qualified doctor in Puerto Rico); (iv) persons suffering from heart disease (same); (v) persons with compromised immune systems (e.g., cancer patients); (vi) persons who are morbidly obese; and (vi) other high-risk individuals,

---

[27]   The full list of categories is as follows: (i) on-duty law enforcement officers, (ii) inmates of penal institutions, (iii) persons turning 18 under custody of the Juvenile Detention Facility Administration, (iv) Commission staff and private employees contracted by the Commission working during election day, (v) health professionals and journalists who will be working during election day, (vi) athletes participating in competitions, professionals who will be outside of Puerto Rico, (vii) persons admitted to hospitals or treatment centers, (viii) judges working during election day, and (ix) candidates for elective public office.  Código Electoral de Puerto Rico 2011, Ley Núm. 78-2011 (June 1, 2011), Artículo 9.039.

[28]   *Id*. at Artículo 9.035.  Accepted reasons to be physically outside of Puerto Rico include personnel on active duty, persons studying in an accredited educational institution, persons working in the Agricultural Employment Program, persons serving the diplomatic or foreign aid of the United States, relatives of those who fall into the aforementioned categories, crewmembers of air or sea carriers, persons confined in penal institutions domiciled in Puerto Rico at the time they were sentenced, employees of the Government of Puerto Rico outside of Puerto Rico on official business, athletes representing Puerto Rico, professionals and their relatives who must remain temporarily outside Puerto Rico, persons domiciled in Puerto Rico whose employers require them to provide services outside of Puerto Rico, and persons undergoing medical treatment outside of Puerto Rico and their relatives.

as described by the World Health Organization.[29]   Notably, the Joint Resolution applied only to the primaries and gave the Commission approximately two months to prepare for these changes.[30]

On June 20, 2020, Governor Vázquez-Garced signed into law the "Código Electoral de Puerto Rico 2020" (the "Election Code") directed at the November general elections and all future contests.   This updated Election Code made a number of changes to the previous law, including (1) expanding the categories of people eligible for early voting to include individuals who are in the hospital or require long-term care, have physical impediments, medical conditions, or other mobility constraints and (2) removing the list of specified reasons restricting absentee voting, thereby allowing any individual who is physically outside of Puerto Rico on election day to vote by absentee ballot.[31]   The Election Code also empowered the Commission to add categories of voters to the list of individuals eligible for early voting (though not to subtract from them).

Unlike the Joint Resolution, the Election Code states that "all of the [listed] categories are eligible for Early Voting or vote by mail."[32]   It also authorizes the Commission to adopt *any* measures necessary to ensure the constitutional rights of its voters.[33]   Notwithstanding its newly capacious mandate, and the growing number of COVID-19 infections and deaths, the Commission has not adopted new measures to protect or accommodate senior citizens for the general elections.

### E.   THE PUBLIC HEALTH AND DISENFRANCHISEMENT CONSEQUENCES OF PUERTO RICO'S FAILURE TO IMPLEMENT VOTE BY MAIL FOR SENIOR CITIZENS DURING THE COVID-19 PANDEMIC

For senior citizens, who already have a higher risk of complications and death from COVID-19, in-person voting will carry with it an increased risk of infection.   Voting in person

---

[29]   Resolución Conjunta Núm. 37, R.C. del S. 556 (June 4, 2020).

[30]   *Id.*

[31]   Código Electoral de Puerto Rico 2020, Ley Núm. 58-2020 (June 20, 2020), Artículos 9.36, 9.37.

[32]   *Id*.

[33]   *Id*.

during the COVID-19 pandemic presents numerous serious health and safety risks. "Polling locations are a prime area for increased transmission of SARS-CoV-2, due to the close proximity of a large number of individuals—voters, observers, poll workers—in a limited space. . . . Due to the transmission of the virus via both droplets and aerosols and contaminated environmental surfaces, polling locations are highly likely to cause increased SARS-CoV—2 infection." Reingold Decl. ¶ 18. Those risks are only exacerbated if polling places are crowded and lines are long, as will likely be the case in November. *Id*. ¶ 19. These risks cannot be fully alleviated regardless of what mitigation measures are put in place, and voting in person will "necessarily [have] a much higher risk of transmission than a person isolating in their own home." *Id*. Acknowledging these risks, the CDC has issued guidelines concerning voting during a pandemic, recognizing that "[t]he more an individual interacts with others, and the longer that interaction, the higher the risk of COVID-19 spread."[34] The CDC recommends that election officials "offer alternative voting methods that minimize direct contact and reduce crowd size polling stations," by adopting, for example, "alternatives to in-person voting."[35]

The spread of COVID-19 from overcrowding in polling places is especially likely to occur in Puerto Rico because of its trifecta of restricted mail-in voting policies, high voter turnout, and a limited number of polling places.[36] This consequence is heavily felt by Puerto Rico's senior citizens, who according to recent U.S. Census Bureau data, comprise more than 20% of Puerto

---

[34]   *Deciding to Go Out*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/deciding-to-go-out.html (last updated July 30, 2020).

[35]   *Considerations for Election Polling Locations and Voters*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last updated June 22, 2020).

[36]   *See* Comisión Estatal de Elecciones de Puerto Rico, *Informe Estadístico: Elecciones Generales, 8 de Noviembre 2016*, at 177, http://ww2.ceepur.org/sites/ComisionEE/es-pr/Documents/Informe%20Estadistico%20EG2016%20-%20Parte2.pdf (showing Puerto Rico's voter turnout since 1900).

Rico's population.[37]  Because the Commission has provided voters no option that avoids exposure to COVID-19, it has effectively disenfranchised a significant number of its citizens who cannot risk exposing themselves to COVID-19.

Indeed, Puerto Rico's recent experience further demonstrates this increased risk for infection.  On August 1 (the day designated for early voting for the primaries), late ballots plagued Puerto Rico's voting locations.  Many counties did not receive ballots until hours after voting was to commence.  With over 21,000 early voters, the late ballots resulted in long and crowded lines of the at-risk communities that early voting was specifically adopted to safeguard.[38]  To address the disenfranchisement that occurred, those unable to vote during the early voting period were allowed to vote on election day, given "preferential treatment," and allowed to vote using a "fast lane."[39]  While this accommodation was made to ensure that citizens had an opportunity to exercise their right to vote, it came at the expense of their health and safety.

Unsurprisingly, these issues occurred once again on the day of the primaries.[40]  Voters, including those over the age of sixty, waited in line in crowded voting centers for hours.[41]  As a result of the setbacks, the primaries were postponed, and several polling stations were closed.[42]  In response to lawsuits filed following the primaries, the Supreme Court of Puerto Rico admonished

---

[37]   *QuickFacts:  Puerto  Rico*, UNITED  STATES  CENSUS  BUREAU  (July  1,  2019), https://www.census.gov/quickfacts/PR.

[38]   Frances Rosario, *Arranca Con Problemas el Voto Adelantado Para el PNP*, PRIMERA HORA (Aug. 1, 2020), https://www.primerahora.com/noticias/gobierno-politica/notas/arranca-con-problemas-el-voto-adelantado-para-el-pnp/ ("Entre otros problemas, Cruz señaló que en Ceiba las personas sí se le han conglomerado en espera de poder votar, lo que representa un riesgo de contagio. Es que la mayoría de los electores son envejecientes.").

[39]   *La CEE Permitirá la Continuación del Voto Adelantado del PNP Durante las Primarias del 9 de Agosto*, EL NUEVO DÍA (Aug. 1, 2020), https://www.elnuevodia.com/noticias/politica/notas/la-cee-permitira-la-continuacion-del-voto-adelantado-del-pnp-durante-las-primarias-del-9-de-agosto/.

[40]   Nicole Acevedo, *Puerto Rico's Chaotic and Unfinished Primary Spurs Voter Suppression Concerns*, NBC NEWS (Aug. 12, 2020), https://www.nbcnews.com/news/latino/puerto-rico-s-chaotic-unfinished-primaries-spur-voter-suppression-concerns-n1236393.

[41]   Patricia Mazzei, *Botched Primary Election Creates a New Crisis in Puerto Rico:  'This Is a Travesty,'* N.Y. TIMES (Aug. 10, 2020), https://www.nytimes.com/2020/08/10/us/puerto-rico-election.html.

[42]   *Id.*

the Commission for their failure to "comply with their duty" to appropriately and constitutionally manage the elections and ordered that the issues be quickly addressed.[43]

### F.   INJURIES AND IRREPARABLE HARM TO PLAINTIFFS

Plaintiff Belia Arlene Ocasio is a sixty-seven year old resident of Puerto Rico.  Declaration of Belia Arlene Ocasio ("Ocasio Decl.") ¶¶ 1-2 (attached hereto as Exhibit C).  She is a registered voter, has voted in almost every primary election and every general election since 1971, and wishes to vote in the upcoming general election on November 3, 2020.  *Id.* at ¶¶ 5, 8.  Ms. Ocasio has asthma and, due to her age and medical condition, is at high risk of suffering from severe complications were she to contract COVID-19.  *Id.* ¶¶ 12-13.

Plaintiff Efraín Colón Damiani is a sixty-nine year-old resident of Puerto Rico.  Declaration of Efraín Colón Damiani ("Colón Decl.") ¶¶ 1-2 (attached hereto as Exhibit D).  He is a registered voter, has voted in every general election since 1972, and wishes to vote in the upcoming general election on November 3, 2020.  *Id.* at ¶¶ 5, 8.  Mr. Colón has high blood pressure, for which he takes medication, and due to his age and medical condition is at high risk of suffering from severe complications were he to contract COVID-19.  *Id.* ¶¶ 12-13.

Both Ms. Ocasio and Mr. Colón are very wary of the risk of infection and have been taking significant precautions to avoid exposure, including by limiting in-person interactions, avoiding all crowds and following social distancing protocols.  Ocasio Decl. ¶¶ 10-11; Colón Decl. ¶¶ 10-11. Both Ms. Ocasio and Mr. Colón know of several individuals in their communities who have tested positive for COVID-19 or experienced symptoms, including individuals who have been hospitalized or passed away from COVID-19.  Ocasio Decl. ¶ 11; Colón Decl. ¶ 11.

Ms. Ocasio and Mr. Colón are among the many Puerto Ricans who are at high risk of severe illness or death should they contract COVID-19, but who nonetheless will have to violate social

---

[43]   *Pedro Pierluisi-Urrutia y Otros v. Comisión Estatal de Elecciones*, 2020 PRSC 82, at 4 (P.R. Aug. 12, 2020).

distancing guidelines and risk their health in order to vote in the general election, absent relief. Neither Ms. Ocasio nor Mr. Colón qualifies for early voting in Puerto Rico under any of the categories authorized by the Election Code for the 2020 general election, and will have to vote in person on November 3 in order to cast their ballots.  Ocasio Decl. ¶ 14; Colón Decl. ¶ 14.  Ms. Ocasio and Mr. Colón have both experienced large crowds of people in line to vote during every election, and have both consistently had to wait a minimum of two hours to cast their votes.  Ocasio Decl. ¶ 9; Colón Decl. ¶ 9.  As a result, both believe that it will be impossible to maintain social distancing at the polls on election day.  Ocasio Decl. ¶ 9; Colón Decl. ¶ 9.  Both Ms. Ocasio and Mr. Colón believe the risk to their lives is too great to vote in person on election day, and will only cast their ballots if they can do so through early voting or by mail.  Ocasio Decl. ¶ 14, Colón Decl. ¶ 14.  Indeed, Mr. Colón has already had to pass up one opportunity to vote; he refrained from voting in the August primaries due to concerns about contracting COVID-19.  Colón Decl. ¶ 7.

## III.   ARGUMENT

### A.   Legal Standards

#### 1.   *Preliminary Injunction*

A preliminary injunction is appropriate where a court finds (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm in the absence of the injunction; (3) that the balance of hardships weighs in the movants' favor; and (4) that granting the injunction will not harm the public interest.  *I.P. Lund Trading AS* v. *Kohler Co.*, 163 F.3d 27, 33 (1st Cir. 1998).  Plaintiffs need not establish a certainty of success, but they must show a "strong likelihood that [they] will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores* v. *Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (quoting *Respect Me. PAC* v. *McKee*, 622 F.3d 13, 15 (1st Cir. 2010)).  Here, Plaintiffs meet all four prongs of this test.

2. *The Anderson-Burdick Framework*

As an initial matter, "it is clear that the voting rights of Puerto Rico citizens are constitutionally protected to the same extent as those of all other citizens of the United States." *Rodriguez* v. *Popular Democratic Party*, 457 U.S. 1, 8 (1982). Where a law places a burden on the voting rights of citizens, courts must balance the character and magnitude of the burden against the relevant government interest served by the law. *See Burdick* v. *Takushi*, 504 U.S. 428, 434 (1992) (citing *Anderso*n v. *Celebrezze*, 460 U.S. 780, 788 (1983)). The First Circuit describes the application of the *Anderson-Burdick* framework as follows:

> The U.S. Supreme Court has developed a flexible "sliding scale" approach for assessing the constitutionality of such restrictions. Under this approach, when the burden imposed by a ballot access regulation is heavy, the provision must be narrowly tailored to promote a compelling state interest. Reasonable, nondiscriminatory restrictions, however, need be justified only by legitimate regulatory interests.

*Barr* v. *Galvin*, 626 F.3d 99, 109 (1st Cir. 2010).

Courts assess the applicable level of scrutiny under Anderson-Burdick based upon both the reach of the burden and the severity of the burden on those it impacts. *See Werme* v. *Merrill*, 84 F.3d 479, 483–84 (1st Cir. 1996); *Barr*, 626 F.3d at 109; *Ayers-Schaffner* v. *DiStefano*, 860 F. Supp. 918, 920 (D.R.I. 1994); *see also One Wis. Inst., Inc*. v. *Thomsen*, 198 F. Supp. 3d 896, 930 (W.D. Wis. 2016), order enforced, 351 F. Supp. 3d 1160 (W.D. Wis. 2019) ("the court must focus on the burdens that the challenged provisions place on eligible voters who cannot comply. . . ."). The fact that a majority of voters "are able to comply . . . does not mean that the burdens that these laws impose are constitutionally insignificant." *One Wis.*, 198 F. Supp. 3d at 930. Because the "right to vote is personal," an *Anderson-Burdick* claim "is not defeated by the fact that 99% of other people can" easily exercise the franchise despite the challenged provision. *Frank* v. *Walker*, 819 F.3d 384, 386 (7th Cir. 2016).

As the First Circuit very recently explained, the *Anderson-Burdick* balancing test requires the court to measure "the 'character and magnitude of the asserted injury to' the voters' rights

13

against the 'precise interests put forward by the State as justifications for the burden imposed.'" *Common Cause R.I.* v. *Gorbea*, --- F.3d ---, No. 20-1753, 2020 WL 4579367, at *1 (1st Cir. Aug. 7, 2020) (quoting *Anderson*, 460 U.S. at 789). "[H]owever slight that burden may appear," the reviewing court must find that it is "justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford* v. *Marion County Election Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman* v. *Reed*, 502 U.S. 279, 288–89 (1992)); *McLaughlin* v. *N.C. Bd. of Elections*, 65 F.3d 1215, 1221 n.6 (4th Cir. 1995) ("We believe that a regulation which imposes only moderate burdens could well fail the *Anderson* balancing test when the interests that it serves are minor, notwithstanding that the regulation is rational."). Unlike traditional rational basis review, the court must consider "the extent to which [the state's] interests make it necessary to burden the plaintiff's rights." *Price* v. *N.Y. State Bd. of Elections*, 540 F.3d 101, 108–09 (2d Cir. 2008) (internal citations and quotation marks omitted) (emphasis added).

The Commission's failure to implement legally authorized measures designed to ensure that all senior citizen voters, like Plaintiffs, have a safe way to vote is impermissible under the *Anderson-Burdick* framework both because the burden placed on Plaintiffs is severe, and because Puerto Rico's interests in maintaining such restrictions are minimal at best—indeed, the legislature and governor have already expressly authorized the measures Plaintiffs seek here.

**B.    The First and Fourteenth Amendment Require That Early Voting and Mail-In Voting Be Provided for Senior Citizens During the Pendency of the COVID-19 Pandemic**

1.    *Plaintiffs are likely to prevail on the merits of their constitutional claims.*

Plaintiffs are highly likely to succeed on the merits of their claims because, given the current pandemic, failure to implement early voting or vote by mail procedures for senior citizens forces Plaintiffs to choose between their health—and possibly lives—and voting, effectively depriving them of their ability to vote. Because the burden placed on Plaintiffs, and other senior citizens, is severe, the Court should apply heightened, if not strict, scrutiny. *See Fusaro* v. *Cogan*,

930 F.3d 241, 257 (4th Cir. 2019) (noting that a "'severe' restriction of [First and Fourteenth Amendment] rights triggers strict scrutiny").  Even assuming that the Court finds that *Anderson-Burdick*'s "balancing" approach requires something less than strict scrutiny, however, Puerto Rico's failure or refusal to implement expanded exceptions to its voting limitations for senior citizens is not justified by a compelling or legitimate state interest and should therefore be found unconstitutionally burdensome in light of the COVID-19 pandemic.

<blockquote>
(a)     The Failure to Implement Early Voting and Vote by Mail for Senior Citizens Merits at Least Heightened Scrutiny Because it Will Effectively Disenfranchise Thousands of Voters While Worsening a Public Health Crisis
</blockquote>

The Commission's failure to implement early voting and vote by mail procedures for senior citizens significantly burdens their fundamental right to vote.  Without these measures, senior citizens, who constitute a large percentage of Puerto Rico's population and are medically more vulnerable to COVID-19 infections, must choose between exercising their right to vote in person and adhering to social distancing guidelines.  If they choose the former, they risk exposing themselves, their families, and their communities to COVID-19, with the accompanying risk of serious illness or death.  If they choose the latter, they are disenfranchised.

The breadth of the impact of the Commission's failure to implement early voting and vote by mail for senior citizens is extensive.  As of November 2016, Puerto Rico had over 600,000 citizens aged sixty-five or older, or approximately 23% of the entire voting-age population.[44]  A majority of these citizens participated in the 2016 general election; there were approximately 125,000 citizens who cast a vote in the 65–69 age range alone.[45]  When including those between

---

[44]   *Citizen Voting-Age Population: Puerto Rico*, UNITED STATES CENSUS BUREAU (Nov. 15, 2016), https://www.census.gov/library/visualizations/2016/comm/citizen_voting_age_population/cb16-tps18_pr.html.

[45]   Comisión Estatal de Elecciones de Puerto Rico, *Informe Estadístico:  Elecciones Generales, 8 de Noviembre 2016*, at 178, http://ww2.ceepur.org/sites/ComisionEE/es-pr/Documents/Informe%20Estadistico%20EG2016%20-%20Parte2.pdf.

the ages 60 and 64—who were authorized to utilize early voting in the Joint Resolution—the total number of senior citizens reaches as many as 800,000.[46]

Courts have found that laws burdening far fewer (and a lower percentage of) voters violate *Anderson-Burdick*. "[E]ven one disenfranchised voter . . . is too many." *League of Women Voters of N.C.* v. *North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014) (finding minority voters were entitled to a preliminary injunction on a bill eliminating same-day registration); *see also Ne. Ohio Coal. For Homeless* v. *Husted*, 696 F.3d 580 (6th Cir. 2012) (affirming order enjoining state from rejecting ballots cast in the wrong precinct due to poll worker error, where rejected ballots constituted less than .248% of votes cast); *Saucedo* v. *Gardner*, 335 F. Supp. 3d 202 (D.N.H. 2018) (enjoining state from enforcing law rejecting ballots due to signature mismatch, despite state's rejection of only .35% of all absentee ballots submitted).

Nor can there be any debate as to the severity of the burden on Plaintiffs should they be unable to vote by mail or through early voting.  By virtue of their age, all 800,000 senior citizen Puerto Ricans are at high risk of severe illness or death should they contract COVID-19; and the risk is greater for individuals who also have other medical conditions.  Reingold Decl. ¶ 7.  Many senior citizens in Puerto Rico suffer from underlying chronic conditions that place them at greater risk—Dr. María Ortiz Tapia, director of a gerontology clinic and Puerto Rico's only certified Clinical Gerontologist, estimates that senior citizen Puerto Ricans have over a 78% chance of death should they contract COVID-19.  Tapia Decl. ¶ 6.  The CDC has advised that the risk for severe illness from COVID-19 increases with age,[47] and that individuals of any age with certain underlying medical conditions including asthma, high blood pressure, and diabetes may also be at

---

[46]  *Id.*

[47]  *Older Adults*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Aug. 16, 2020).

higher risk.[48]  Complications can include acute respiratory distress syndrome, sepsis and septic shock, and multi-organ failure.[49]  Individuals over the age of sixty-five may be more than three times more likely to be hospitalized as a result of the virus.[50]  In the United States, 80% of those who have passed away due to complications of COVID-19 have been age sixty-five or older.[51]  Similarly, over 75% of decedents in the United States had at least one underlying medical condition that placed them at higher risk.[52]

Yet, taking the necessary precautions to avoid infection will likely be impossible at polling sites, making contracting COVID-19 a significant possibility.  Reingold Decl. ¶¶ 18-19, 21.  According to the Commission, of the 1,590,389 individuals who cast a ballot in the 2016 general election, 1,563,348 voted in person on election day,[53] at one of 1,441 polling sites—an average of 1,085 people per location.[54]  And the crowd will likely be even denser this year.  With the closure over the last four years of hundreds of schools that had served as polling sites in the past, the total number of polling sites has decreased by nearly 200, or nearly 15%.[55]

---

[48]  *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (last updated July 30, 2020).

[49]  *Clinical Management of Severe Acute Respiratory Infection (SARI) when COVID-19 Disease is Suspected*, WORLD HEALTH ORGANIZATION (Mar. 13, 2020), https://www.who.int/docs/default-source/coronaviruse/clinical-management-of-novel-cov.pdf.

[50]  Marie E. Killerby et al., *Morbidity and Mortality Weekly Report: Characteristics Associated with Hospitalization Among Patients with COVID-19—Metropolitan Atlanta, March–April 2020*, CENTERS FOR DISEASE CONTROL AND PREVENTION (June 26, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6925e1.htm.

[51]  *Older Adults*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Aug. 16, 2020).

[52]  Jonathan M. Wortham et al., *Morbidity And Mortality Weekly Report: Characteristics of Persons who Died with COVID-19—United States, February 12–May 18, 2020*, CENTERS FOR DISEASE CONTROL AND PREVENTION (July 17, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6928e1.htm?s_cid=mm6928e1_w.

[53]  Comisión Estatal de Elecciones de Puerto Rico, *Informe Estadístico:  Elecciones Generales, 8 de Noviembre 2016*, at vi, http://ww2.ceepur.org/sites/ComisionEE/es-pr/Documents/Informe%20Estadistico%20EG2016%20-%20Parte1.pdf.

[54]  *Id*.

[55]  Aiola Virella, *Cierre de Escuelas Limitará los Centros de Votación*,  METRO (Feb. 21, 2020), https://www.metro.pr/pr/noticias/2020/02/21/cierre-escuelas-limitara-los-centros-votacion.html.

Even conservatively estimating that the same number of Puerto Ricans will seek to vote in 2020 as in 2016, this would mean that an average of over 1,250 individuals would have to visit each location, were the Commission to continue to fail to implement the expanded early and absentee voting options for senior citizens.[56]  Even spread over the course of a day, such numbers will likely make social distancing and comprehensive disinfecting of surfaces impossible.  *See* Reingold Decl. ¶¶ 18-19.  It is more than reasonable to expect that many, particularly senior citizens and others who are medically vulnerable, would choose to refrain from voting rather than risk such extreme exposure to a deadly virus; indeed, 21,000 Puerto Ricans opted for early voting for the 2020 primaries under the expanded eligibility requirements,[57] up more than 500% from approximately 4,000 for the 2016 general election.[58]

Multiple courts have already agreed that voting regulations requiring in-person interaction with just one or two individuals during the continuing pandemic placed unconstitutionally severe burdens on voters.  *See, e.g.*, *Thomas* v. *Andino*, No. 3:20-CV-01552-JMC, 2020 WL 2617329, at *23 (D.S.C. May 25, 2020) (granting preliminary injunction enjoining South Carolina from enforcing requirement that absentee ballots be witnessed by one other individual because it would burden plaintiffs by requiring that they expose themselves to others); *League of Women Voters of Va.* v. *Va. State Bd. of Elections*, No. 6:20-CV-00024, 2020 WL 2158249, at *6-7 (W.D. Va. May 5, 2020) (noting, in approving partial consent decree, that plaintiffs had pled a "probable violation of federal law" in claiming that witness requirement placed a severe burden on voters because it

---

[56]   Puerto Rico has historically had significantly higher voter turnout than what was seen in the 2016 general election.  From 1956 through 2012, Puerto Rico consistently had voter turnout rates of 78% or more; 2016's 56% was the lowest participation rate since 1904.  *Informe Estadístico*, at 177.  Should 80% of all eligible Puerto Ricans seek to vote in this year's general election, approximately 2.3 million individuals would need access to the polls or alternate methods of voting.

[57]   *Sobre 21 Mil Electores del PNP Votan Adelantado Hoy Para Las Primarias*, WAPA TV: DECISIÓN 2020 (Aug. 1, 2020), https://sites.wapa.tv/decision2020/sobre-21-mil-electores-del-pnp-votan-adelantado-hoy-para-las-primarias/.

[58]   *Informe Estadístico*, at vi.

"forces them to interact with another individual, risking COVID-19 infection, in order to exercise their right to vote").

Just this month, the First Circuit joined these courts. In *Common Cause R.I.* v. *Gorbea*, --- F.3d ---, No. 20-1753, 2020 WL 4579367 (1st Cir. Aug. 7, 2020), the First Circuit upheld the District Court's approval of a consent decree enjoining enforcement of Rhode Island's "two witness" rule, which required voters submitting mail-in ballots to mark the ballot in the presence of two witnesses or a notary. Speaking to the rule's burdens on voters, the Circuit underscored that they were "significant" and "much more unusual and substantial than those that voters are generally expected to bear" when considered "in the midst of a pandemic." *Id*. at *2. Critically, the Circuit emphasized that this was the case because "many voters may be deterred by the fear of contagion from interacting with witnesses or a notary,"—that is, by coming into proximity with, at most, two other people—and that "[t]aking an unusual and in fact unnecessary chance with your life is a heavy burden to bear simply to vote." *Id*.

Here, the risk of infection is exponentially higher:  the Election Code will require at-risk senior citizens to vote in person on election day, generally indoors, and often within reach of dozens or even hundreds of other voters. The burden on Plaintiffs is thus much heavier than what the First Circuit considered "unusual" in *Common Cause R.I.* Witness requirements force voters to be exposed to one or two others for a short period of time, where such individuals might be known to them. By contrast, voting in person on election day would expose medically vulnerable citizens like Plaintiffs to hundreds of strangers, for extended periods of time, in crowded, often enclosed areas where social distancing is impossible and sufficient ventilation to eliminate transmission via aerosolized droplets cannot be guaranteed.

Given that the burden placed upon Puerto Rico's senior citizens—risking their health and perhaps even lives by exposing themselves to COVID-19, or disenfranchisement—is the most

severe imaginable, heightened scrutiny applies, and Defendants' actions, including refusal to act, must be narrowly tailored to promote a compelling interest.  *Barr*, 626 F.3d at 109.

> (b)  Puerto Rico Does Not Have a Compelling Interest in Denying Senior Citizens Early Voting or Vote by Mail Alternatives

It is clear that, under the *Anderson-Burdick* balancing framework, Plaintiffs are entitled to relief.  Puerto Rico does not have a compelling interest in refraining from allowing senior citizens access to early and absentee voting for the November general elections.  In fact, the Legislative Assembly, after acknowledging the grave and imminent dangers of COVID-19, already expanded those eligible for early voting in preparation for the August primaries to include, among other things, individuals sixty-years old and older.[59]  Moreover, if the Commission had an interest in returning to the status quo for the general elections, that interest vanished the moment the new Election Code became law, since the Election Code significantly changes the eligibility criteria for early and absentee voting for the general elections.[60]  Plaintiffs merely seek to have senior citizens included in the changes that the Commission will have to make as a result of its legal mandate. The Commission likewise cannot plausibly claim an interest in preventing fraud—as the Supreme Court of Puerto Rico noted just this month in connection with the primaries, fraud allegations "must be pleaded with acts, through clear, robust and convincing evidence, and not through inference or deductions." *Pedro Pierluisi-Urrutia y Otros v. Comisión Estatal de Elecciones*, 2020 PRSC 82, at 25 n.16 (P.R. Aug. 12, 2020).  There is no such evidence to support any concerns regarding fraud here.

Indeed, accommodations that would allow for senior citizens to early voting or by mail during the current pandemic are increasingly being adopted by many states, including Indiana,

---

[59]  Resolución Conjunta Núm. 37, R.C. del S. 556 (June 4, 2020).

[60]  Código Electoral de Puerto Rico 2020, Ley Núm. 58-2020 (June 20, 2020), Artículos 9.36, 9.37.

Kentucky, Louisiana, Mississippi, South Carolina, Tennessee, Texas, and West Virginia.[61]   As COVID-19 infection rates continue to surge, it is becoming more necessary to accommodate for the citizens most at-risk during the pandemic in order to ensure a safe voting process and to respect every citizen's fundamental right to vote.

Finally, even if the Commission were to have some compelling interest—which it does not—its actions must be narrowly tailored to meet it, and the failure to take any action to allow at-risk senior citizen access to early and absentee voting, during a pandemic, cannot possibly meet that standard.   It is not enough that a state's chosen course of action may be reasonable or constitutional under ordinary circumstances.   During the pandemic, courts across the country have found the failure to modify or waive long-established requirements to be unconstitutional.   *See, e.g., Acosta* v. *Pablo Restrepo*, No. 1:20-CV-00262-MSM-LDA, 2020 WL 3495777, at *4-5 (D.R.I. June 25, 2020) (granting a preliminary injunction waiving in-person signature of nomination papers, upon finding that while the requirement may be reasonable under ordinary circumstances, it was not sufficiently narrowly tailored during the COVID-19 pandemic because it would jeopardize plaintiffs' health and that of the public); *Thomas*, 2020 WL 2617329, at *23 (D.S.C. May 25, 2020) (enjoining witness requirement for absentee balloting as "we are not living in normal times; we are living in pandemic times"); *League of Women Voters of Va.*, 2020 WL 2158249, at *8 (noting that "these are not ordinary times" in approving partial consent decree banning witness requirement for absentee balloting in primary election); *Libertarian Party of Ill.* v. *Pritzker*, 2020 WL 1951687, at *4 (N.D. Ill. Apr. 23, 2020) (finding that the "combined effect of . . . Illinois' stay-at-home order and the usual in-person signature requirements [posed] a nearly insurmountable hurdle"); *People First of Ala.* v. *Merrill*, No. 20-12184, 2020 WL 3207824 (N.D. Ala. June 15, 2020) (enjoining absentee ballot witness requirement during pandemic); *People First*

---

[61]   National Conference of State Legislatures, *VOPP: Table 2: Excuses to Vote Absentee* (April 20, 2020), https://www.ncsl.org/research/elections-and-campaigns/vopp-table-2-excuses-to-vote-absentee.aspx.

*of Ala.* v. *Sec'y of State for Ala.*, No. 20-12184, 2020 WL 3478093 (11th Cir. June 25, 2020) (denying a stay of the preliminary injunction decision enjoining absentee ballot witness requirement pending appeal).  It cannot be reasonable for the Commission to turn a blind eye to the safety of Puerto Rico's senior citizens in the exercise of their constitutional right in the midst of a deadly pandemic.

### C.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT INJUCTIVE RELIEF

Puerto Rico's current early and absentee voting policies will prevent Plaintiffs—and thousands of other senior citizens—from voting in November without putting their health in jeopardy by disregarding public health guidelines.  That will inevitably disenfranchise voters, like Plaintiffs, who have determined that they cannot risk their health or lives, or those of their loved ones—even to exercise their fundamental right to vote. *Elrod* v. *Burns*, 427 U.S. 347, 373 (June 28, 1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also Asociación de Educación Privada de P.R.* v. *García Padilla*, 490 F.3d 1, 21 (1st Cir. 2007) (applying *Elrod* to irreparable harm component of permanent injunction analysis).

Indeed, courts routinely deem restrictions on fundamental voting rights irreparable injuries. *Jones* v. *Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020) ("The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm."); *League of Women Voters of N.C.*, 769 F.3d at 247; *Obama for Am.* v. *Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams* v. *Salerno*, 792 F.2d 323, 326 (2d Cir. 1986).  This is because "once the election occurs, there can be no do-over and no redress.  The injury to these voters is real and completely irreparable if nothing is done to enjoin this law." *League of Women Voters of N.C.*, 769 F.3d at 247; *see also Fla. Democratic Party* v. *Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016) (noting that voting rights cases are not situations "where failing to grant the requested relief would be a mere inconvenience to Plaintiff and its members"—an election "isn't golf: there are no

mulligans."). And of course, there "can be no injury more irreparable" than "serious, lasting illness or death." *Thakker* v. *Doll*, No. 1:20-CV-480, 2020 WL 1671563, at *4 (M.D. Pa. Mar. 31, 2020).

Here, both Plaintiffs believe that voting in person on election day will place their lives at risk, and are unwilling to take that risk. Ocasio Decl. ¶ 14, Colón Decl. ¶ 14. Absent action by the Commission to enable them to vote early or by mail, or intervention from the Court, Plaintiffs will be irreparably harmed by the resulting disenfranchisement.

### D.   THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST SUPPORT INJUNCTIVE RELIEF

The balance of the equities and public interest weighs heavily in favor of an injunction. As an initial matter, the administrative burden on Defendants to implement these protections for the general elections in November is slight. The Joint Resolution significantly increased the number of voters eligible for early voting and gave the Commission approximately two months to prepare for these accommodations ahead of the primaries. These protocols and facilities used for the primaries can be easily adopted for the general elections, which are still more than two months away and scheduled to be held a full five months after the June 4 Joint Resolution. Similarly, as the Election Code expanded the number of the persons eligible for absentee voting for the general elections, the Commission will already have to reengage with its voting by mail procedures to accommodate the increase in mail-in votes. Thus, any administrative hurdles associated with allowing senior citizens to vote by mail will likely be minimal and can be addressed during this process. *See, e.g.*, *People First of Ala.*, 2020 WL 3478093, at *6 (finding that proposed voting measure faced "minimal burdens because it generally requires the use of polling supplies and staff that already exist," especially when compared to forcing citizens to "vote in-person inside a polling place in contravention of the CDC's . . . recommendation to minimize in-person interactions").

Certainly, none of these anticipated administrative burdens justify the deprivation of citizens' constitutional right to vote. Indeed, they are nothing more than what is already within the Commission's mandate. The Election Code requires that the voter be provided with the "most

ample accessibility, without barriers" and that the electoral procedures be "based on the most ample participation and accessibility." *Pedro Pierluisi-Urrutia*, 2020 PRSC 82, at 17.  In the context of the primaries, the Supreme Court of Puerto Rico warned the Commission that "[i]t hopes that, in the name of democracy, there are no more failures, inefficiencies, errors nor procrastinations.  Any other result or deviation from what has been intimated would clearly be unacceptable." *Id.* at 28.  The same applies to the implementation of voter protections for the November general elections.

Conversely, the harms to Plaintiffs and Puerto Rico's senior citizens are great, irreparable, and imminent.  Puerto Rico's current voting policies will force Plaintiffs to choose between two evils:  (1) disenfranchisement or (2) risking their health and that of their loved ones.  Courts— including the First Circuit—have found that both of these consequences are grave and warrant an injunction.  *See, e.g.*, *Common Cause R.I.*, 2020 WL 4579367, at *2 (upholding District Court's approval of consent decree enjoining enforcement of Rhode Island's "two witness" voting requirement for mail-in voting); *Thomas,* 2020 WL 2617329 at *21 (granting preliminary injunction on voting requirement as applied to June elections, acknowledging the "particularly severe burdens given the loss of life, toll of sickness from COVID-19, and the risk that violating social distancing protocols pose to Plaintiffs and their communities").

The public's significant interest in ensuring its citizens their constitutional right to vote is best served by an injunction.  *See League of Women Voters of N.C.*, 769 F.3d at 247–48 ("The public interest . . . favors permitting as many qualified voters to vote as possible."); *Obama for Am.*, 697 F.3d at 437 (finding that public interest "favors permitting as many qualified voters to vote as possible"); *Libertarian Party of N.H.* v. *Sununu*, No. 20-CV-688-JL, 2020 WL 4340308, at *21 (D.N.H. July 28, 2020) ("[I]t is always in the public interest to prevent violation of a party's constitutional rights.") (quoting *ACLU Fund of Mich.* v. *Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015)); *Paher* v. *Cegavske*, No. 320CV00243, 2020 WL 2089813, at *2 (D. Nev. Apr. 30,

2020) (interest in maintaining "a high level of access to the ballot, while protecting the safety of voters and poll workers—who belong to groups who are at high risks for severe illness from COVID-19" outweighed concern for voter fraud).

Furthermore, the public also has a significant interest in safeguarding public health and minimizing the spread of COVID-19. This interest is also best served by an injunction.[62] "Widespread vote-by-mail, absentee balloting, or methods other than in-person voting on a single Election Day would be much safer options for public health, in light of COVID-19, as such methods would vastly decrease the number of individuals needing to vote in person and thus substantially decrease the number of people coming into proximity at polling locations and the spread of SARS-CoV-2 via droplets, aerosols, and environmental surfaces." Reingold Decl. ¶ 20; *see also Thakkar*, 2020 WL 1671563, at *4, 7 ("[T]here can be no injury more irreparable . . . than . . . "serious lasting illness or death . . . . [C]ourts have even specifically held that COVID-19 constitutes an irreparable harm that supports the grant of a TRO" and citing cases).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant a temporary restraining order and preliminary injunction ordering Defendants to implement policies allowing senior citizens access to early and absentee voting for the November general elections.

---

[62]   A study by university researchers into Wisconsin's April 7 primary election, found a "statistically and economically significant association between in-person voting and the spread of COVID-19 two to three weeks after the election." Chad D. Cotti et al., *The Relationship Between In-Person Voting, Consolidated Polling Locations, and Absentee Voting on COVID-19: Evidence From the Wisconsin Primary*, Working Paper 27187, NAT'L BUREAU OF ECON. RESEARCH, at 1 (May 2020), https://www.nber.org/papers/w27187. Using information from the Wisconsin Department of Health and anonymized cell phone location data, the study suggests that in-person voting in Wisconsin on April 7 accounted for about 700 new COVID-19 cases during the five weeks immediately following the election—7.7% of all new cases in Wisconsin during that time period. *Id.* The study "suggests it may be prudent, to the extent possible during the COVID-19 epidemic . . . for policy makers and election clerks to take steps to either expand the number of polling locations, voting times, early opportunities, or encourage absentee voting in order to keep the population density of voters as low as possible." *Id.* at 15.

Dated:   August 20, 2020

Respectfully submitted,


/s/ Fermín L. Arraiza-Navas
Fermín Arraiza-Navas
#215705
farraiza@aclu.org
(787) 966-3133

Mayté Bayolo-Alonso*
mbayolo@aclu.org
(787) 448-5544

American Civil Liberties Union
of Puerto Rico
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
(787) 753-9493

*Of Counsel

Adriel I. Cepeda Derieux**
Dale E. Ho**
Theresa J. Lee**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
acepedaderieux@aclu.org
dho@aclu.org
tlee@aclu.org

Jaren Janghorbani**
Lissette A. Duran**
Makiko Hiromi**
Juan Gascon**
Paul, Weiss, Rifkind, Wharton &
  Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
jjanghorbani@paulweiss.com
lduran@paulweiss.com
mhiromi@paulweiss.com
jgascon@paulweiss.com

**Pro hac vice application forthcoming

26

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| BELIA ARLENE OCASIO and EFRAÍN COLÓN DAMIANI, <br><br> *Plaintiffs*, <br><br> v. <br><br> COMISIÓN ESTATAL DE ELECCIONES and JUAN DÁVILA-RIVERA, in his official capacity as President of the Comisión Estatal de Elecciones, <br><br><br><br> *Defendants*. |

Civil Action No.

**[PROPOSED] ORDER**

**[PROPOSED] TEMPORARY RESTRAINING ORDER**

Pursuant to Fed. R. Civ. P. 65, and having reviewed Petitioners' Notice of Motion for Temporary Restraining Order and Preliminary Injunction, the Memorandum of Law in Support of their Motion, with attached declarations and exhibits, and any response thereto, the Court HEREBY ORDERS that:

1. The motion is granted because Petitioners have demonstrated that they are substantially likely to prevail on their claims that the failure to implement early voting or vote by mail for citizens over the age of 60 constitutes an unconstitutional burden on their right to vote; that Petitioners will suffer irreparable harm from their inability to vote early and/or by mail in the upcoming general election; and that the balance of equities and public interest weigh heavily in support of injunctive relief;

2. Defendants implement policies allowing senior citizens to safely vote in the November 2020 general election, by:

   a. Identifying voters over sixty years of age as individuals eligible to vote by *voto adelantado* (early voting) during the pendency of the COVID-19 pandemic;

1

b.  Identifying voters over sixty years of age as individuals eligible to vote by *voto ausente* (mail-in ballot) during the pendency of the COVID-19 pandemic; and

c.  Updating all public education materials, including written, online, and on-air, to reflect the above eligibility rules.

IT IS SO ORDERED.

Date: _____

_____
Hon. _____, U.S.D.

2