**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

<table>
<tr><td>

**BELIA ARLENE OCASIO, et al.**

**Plaintiffs,**

**v.**

**COMISIÓN ESTATAL DE ELECCIONES, et al.**

**Defendants**

</td><td>

**CIVIL NO. 20-1432 (PAD)**

</td></tr>
</table>

**MOTION TO DISMISS FOR LACK OF JURISDICTION**
**PURSUANT TO FED.R.CIV.P. 12(b)(1) AND**
**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**TO THE HONORABLE COURT:**

Come now the defendants, without waiving any right or defense arising from Title III of *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§2101 *et seq.*, and the Commonwealth's Petition under said Title or under this case and without submitting to the Court's jurisdiction, and through the undersigned attorney, very respectfully **STATE** and **PRAY** as follows:

**I. INTRODUCTION**

On August 20, 2020, Plaintiffs filed the Complaint in the instant case. Plaintiffs allege that they are citizens over the age of sixty (60), registered voters who want to participate on the General Elections to take place on November 3, 2020, that have preexisting medical conditions, and that voting in person may potentially endanger their health due to the COVID-19 Pandemic. Plaintiffs allege that Puerto Rico's early and absentee voting policies will force senior citizens and those with underlying health conditions to choose between two irreparable

harms in November: violating public health social distancing guidelines designed to protect them and their loved ones, or foregoing their fundamental right to vote in the general election.[1]

Plaintiffs request an Injunctive relief directing the appearing Defendants to adopt policies permitting senior citizens to early access and absentee voting for the November general elections.[2]

## II. STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 12 (b)(1)

A defendant may move to dismiss an action against him under Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are obligated to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case. Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14 (1st Cir. 2013) (citations omitted). Moreover, it is "black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) (citations omitted).

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occupational Safety & Health Admin., 62 F.3d 37 (1st Cir. 1995) (citing 5A Charles Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE § 1350, at 210 (2d ed. 1990)). "It is not simply formalistic to decide the jurisdictional issue when the case would be dismissed in any event for failure to state a claim. Different consequences flow from dismissals under 12(b)(1) and 12(b)(6): for example, dismissal

---

[1] Complaint for Injunctive and Declaratory Relief, Docket No. 1, ¶1, page 1; Notice of Motion for Temporary Restraining Order and Permanent Injunction, Docket No. 2, Part II(F), page 21.
[2] Notice of Motion for Temporary Restraining Order and Preliminary Injunction, Docket No. 2, Part I, page 12.

under the former, not being on the merits, is without res judicata effect." Northeast Erectors, 62 F.3d at 39 (citing 2A James Moore, et al., MOORE'S FEDERAL PRACTICE § 12.07, at 12-49 & n. 3 (1993)).

"When a defendant moves to dismiss for lack of federal subject matter jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). Subject-matter jurisdiction is properly invoked when a colorable claim "arising under" the Constitution or law of the United States is pled. 28 U.S.C. § 1331; Arbaugh v. Y & H Corp., 546 U.S. 500, 513, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (internal citation omitted). Usually, a claim arises under federal law if a federal cause of action emerges from the face of a well-pleaded complaint. See Viqueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1988) (internal citations omitted).

Rule 12(b)(1) provides a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). A movant may base a challenge to the sufficiency of the plaintiff's assertion of subject matter jurisdiction solely on the pleadings. Id. At 363. In that case, we take the plaintiff's "jurisdictionally-significant facts as true" and "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id. At 363; see Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir. 2000).

This analysis is necessary because "[a] court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a fact bound jurisdictional question looms, a court must be allowed considerable leeway in weighing

the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." <u>Valentín</u>, 254 F.3d at 364 (citing <u>Williamson v. Tucker</u>, 645 F.2d 404, 412-13 (5th Cir.1981)).

**Mootness Standard:**

Article III of the Constitution limits federal-court jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2. The Supreme Court has interpreted this requirement to demand that "an actual controversy … be extant at all stages of review, not merely at the time the complaint is filed." <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 67 (1997). "Article III prohibits federal courts from deciding 'moot' cases or controversies-that is, those in which 'the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" <u>United States v. Reid</u>, 369 F.3d 619, 624 (1st Cir.2004) (citing <u>United States Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 396 (1980); <u>Gulf of Maine Fishermen's Alliance v. Daley</u>, 292 F.3d 84, 87 (1st Cir.2002)). "If events subsequent to the filing of the case resolve the dispute, the case should be dismissed as moot." Erwin Chemerinsky, <u>Federal Jurisdiction</u> 480 (5th ed.2007).

The doctrine of mootness requires that an actual controversy be "extant at all stages of the review, not merely at the time the complaint is filed." <u>Mangual v. Rotger–Sabat</u>, 317 F.3d 45, 60 (1st Cir.2003) (quoting <u>Steffel v. Thompson</u>, 415 U.S. 452, 460 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477–78 (1990). A case becomes moot, however, "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." <u>Knox v. Serv. Employees Int'l Union, Local 1000</u>, 567 U.S. 298,

307, 132 S. Ct. 2277, 2287, 183 L. Ed. 2d 281 (2012). A claim for injunctive relief is moot if the Court "cannot grant any 'effectual relief' by ordering the injunction" because "the parties no longer have a legally cognizable stake in the outcome." In re Light Cigarettes Marketing Sales Practices Litigation, 271 F.R.D. 402, 422 (D. Me. 2010) (quoting N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 73 (1st Cir. 2006)) (internal quotation marks omitted). A case also becomes moot if events have transpired to render a court opinion merely advisory. KG Urban Enters., LLC v. Patrick, 969 F.Supp.2d 52, 56 (D. Mass. 2013) (citing Catholic Bishops, 705 F.3d at 52–53).

Mootness is a ground which should ordinarily be decided in advance of any determination on the merits. See Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997). Further, courts are obligated to follow the doctrine of constitutional avoidance, under which federal courts are not to reach constitutional issues where alternative grounds for resolution are available. Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir.2013). See also, Mills v. Rogers, 457 U.S. 291, 305 (1982).

The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated. United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953). The purpose of an injunction is to prevent future violations, Swift & Co. v. United States, 276 U.S. 311, 326 (1928). It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). "[I]f it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.'" Id. at 289, n. 10. In accordance with this principle, the standard that the Supreme Court has for determining whether a case has been mooted by the defendant's voluntary conduct is

stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).

**Plaintiffs' claims are moot:**

On August 25th, 2020, the Commission held a meeting in which all Commissioners agreed to maintain the category of voters 60 years of age and older in the Request for Advanced Voting.[3] The Commissioners disagreed, in part, on the method of said vote. There was agreement in that the voting ballots be sent by mail, but disagreement in the method of returning said voting ballots. On that same date, based on said disagreement, the former President of the CEE, Hon. Juan Ernesto Dávila Rivera, issued Resolution CEE-RS-20-145, in which he determined:

   a.  Article 9.38(8) of the Electoral Code of 2020, Act No. 58-2020, provides that "all advanced vote is eligible for vote by mail.[4]

   b.  Article 3.4(6) of the Electoral Code of 2020, Act No. 58-2020, provides "Any amendment for the inclusion of another category for advanced vote in the ninety (90) days before the corresponding General Election, will be done unanimously by the Electorate Commissioners present.[5]

---

[3] Certification of Agreement and Disagreement, CEE-AC-20-248. **Exhibit A.**
[4] Resolution CEE-RS-20-145, dated August 25, 2020, Part II, page 2. **Exhibit B.**
[5] Id., at page 3.

Former Presient Dávila, citing Art. 5.1(17), Art. 9.38(8), and Art. 9.39 of the Electoral Code of 2020, ruled that voters with the right to advanced vote can vote by mail in the next General Elections.[6] Due to COVID-19, a State of Emergency was declared on March 15, 2020 by means of Executive Order No. 2020-023, with the purpose of adopting the necessary measures to prevent the uncontrolled spread of COVID-19 in Puerto Rico. Since we are currently in the middle of the COVID-19 Pandemic, and that vote by mail constitutes a tool to avoid the spread of the virus while guaranteeing the right to vote to the voters with the right to that option, it was ruled that the box for the vote by mail method should be maintained in the request for advanced voting for the General Elections of 2020 and the Plebiscite.[7]

Former President Dávila ordered the final changes to the Form for the request of advanced voting to be made immediately; once those changes are made, that the form is sent to all Electorate Commissioners; and that the Form is placed at the CEE's webpage for ample publicity.[8] Any Electorate Commissioner who wanted to file a judicial review of this Resolution had ten (10) days from its publication to file a judicial review before the Court of First Instance.[9] Since no judicial review was filed, this Resolution became final on September 4th, 2020. The Form for the request of advanced vote for the General Elections and Plebiscite of 2020, which can be found on the CEE's website, establishes the deadline for the request, it contains the box for vote by mail, and in letter (J) it states the option of Seniors over 60 years of age to request advanced vote.[10]

---

[6] Id., Part III, at page 3.
[7] Id., Part III, pages 3-4.
[8] Id., at page 4.
[9] Id.
[10] Request for Advanced Vote for the General Elections and Plebiscite 2020. **Exhibit C.**

On August 26, 2020, Former President Dávila issued Resolution CEE-RS-20-146 in order to expand the position of the Electorate Commissioners regarding to the agreement and disagreements in CEE-AC-20-248,[11] and reiterated its Resolution CEE-RS-20-145.[12] Any Electorate Commissioner who wanted to file a judicial review of this Resolution had ten (10) days from its publication to file a judicial review before the Court of First Instance.[13] Since no judicial review was filed, this Resolution became final on September 8th, 2020.

As to any claim of a reasonable expectation that the wrong will be repeated that Plaintiffs may raise, the appearing defendants contend that any claim of that nature would be misplaced and misleading. Article 9.37(3) of the Electorate Code of 2020, Act No. 58 of 2020, provides that the Commission may add to the list of reasons and categories of voters eligible for advanced voting, but never reduce or eliminate any. Therefore, the category of seniors over the age of sixty, added to the categories of voters eligible for advanced voters, which was added by an unanimous agreement of the Commissioners in CEE-AC-20-248, cannot be repealed or eliminated by the Commission, and there would be no danger of the alleged wrong to be repeated.[14]

Also, Art. 9.38(4) of the Electorate Code, Act No. 58 of 2020, provides that the advanced vote has to be requested on or before fifty (50) days prior to the elections in the electorate colleges; that the request form will be posted at the CEE's website, and at the Permanent Enrollment Board (JIP as its Spanish acronym).[15] To this effect, the deadline to request the

---

[11] Resolution CEE-RS-20-146, dated August 26, 2020. **Exhibit D.**
[12] Id., at page 3.
[13] Id., at page 4.
[14] **Exhibit E.**
[15] Id.

advanced vote expires, by legislative action, on September 14, 2020. Any amendment to this legislative disposition, would necessarily require legislative action.

Art. 9.38(5) provides that the Request form must be in Spanish and English. Art. 9.38(9) provides that all advanced voting is eligible for vote by mail. The CEE currently has an English version of the form.[16] Finally, Art 9.38(10) provides that the Commission will develop a <u>general orientation plan</u> for the implementation of the advanced vote.[17] In compliance with Art. 9.38(10), the CEE has established a general orientation plan in order to educate senior citizens of their right to request an advanced vote, via written electronic press[18] and popular news radio shows in the AM band. These will start running on this date.

Considering all the above stated, it is evident that Plaintiffs' claims are moot, since, to this date, all have been attended to by the CEE.

### III. PRELIMINARY INJUNCTION STANDARD

Injunctive relief "is an 'extraordinary and drastic remedy.'" <u>Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011) (quoting <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008)). To obtain such relief, the Court must consider: (1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest. <u>Corp. Techs., Inc. v. Harnett</u>, 731 F.3d 6, 9 (1st Cir. 2013). Plaintiffs "bear[ ] the burden of establishing that these four factors weigh in [their] favor." <u>Esso Standard Oil Co. (P.R.) v. Monroig-Zayas</u>, 445 F.3d 13, 18 (1st Cir. 2006)(citation omitted).

---

[16] **Exhibit C.**
[17] **Exhibit E.**
[18] **Exhibit F.**

The appearing defendants incorporate their discussion in Part II to the instant one. As such, plaintiffs cannot establish none of the Preliminary Injunction elements in order for the Honorable Court to grant them the remedy requested and enter a Preliminary Injunction against the appearing defendants since Plaintiffs seek this remedy on the argument that the Commission has failed to implement a legally authorized measure designed to ensure that all senior citizen voters, like Plaintiffs, have a safe way to vote. Plaintiffs request an Injunctive relief directing the appearing Defendants to adopt policies permitting senior citizens to early access and absentee voting for the November general elections.[19]

Plaintiffs aver that an injunction will merely require the Commission to fulfill its legal mandate and implement for the general elections the changes made for the primaries and allowed by the Election Code.[20] Defendants respectfully contend that CEE-AC-20-248 and CEE-RS-20-145 precisely attend to senior citizen voters right to vote safely from the risk to contract COVID-19 by requesting an advanced vote by mail. Therefore, Plaintiffs' request for Preliminary Injunctive Relief fails. Under the current circumstances, described above, Plaintiffs cannot establish that (1) they are likely to prevail on the merits, (2) that they will suffer irreparable harm, (3) that the balance of equities shifts in their favor and (4) that granting injunction is in the public's interest. As such, the instant complaint must be dismissed as moot, and Plaintiff's request for a Declaratory Judgment be denied there is no longer a "'substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016).

---

[19] Notice of Motion for Temporary Restraining Order and Preliminary Injunction, Docket No. 2, Part I, page 12.
[20] Notice of Motion for Temporary Restraining Order and Preliminary Injunction, Docket No. 2, Part I, page 12.

Furthermore, Plaintiffs request as relief that the Court direct Defendants, their agents, employees, and successors, and all those persons acting in concert or participation with them to implement policies allowing senior citizens to safely vote in the November 2020 general election, by: (a) identifying voters over sixty years  of age as individuals eligible to vote by *voto adelantado* during the pendency of the COVID-19 pandemic; (b) identifying voters over sixty years of age as individuals eligible to vote by *voto ausente* (mail-in ballot) during the pendency of the COVID-19 pandemic; and (c) updating all public education materials, including written, online, and on-air, to reflect the above eligibility rules. Pursuant to the above discussion, Plaintiffs cannot establish the elements of the Preliminary Injunctive requested, therefore have no right to the remedies above stated. Nonetheless, the Defendants contend that these remedies are extreme, onerous to the Commission and exceed the rights that the two single plaintiffs have, who can only request a remedy for themselves and not for third parties, and whose claims have been attended to and fulfilled by the Defendants. Furthermore, these requests constitute a fishing expedition with no relevance to the claims and voter rights of the Plaintiffs.

Being that the CEE has already implemented the necessary measures for all senior citizens who are interested to request an advanced vote for mail to do so, and on this date have begun the general orientation campaign mandated by the Electoral Code on electronic media and on widespread national news radio programs, Plaintiffs rights have been attended to as also the rights of all other senior citizen voters who wish to request an advanced vote by mail. The Law does not require the extreme measures requested by the Plaintiffs, to which they don't have a right to with or without a Preliminary Injunctive Relief.

## IV. CONCLUSION

Based on the arguments above discussed, the Defendants respectfully request that the Court to deny Plaintiffs' request for Declaratory Judgment and Injunctive Relief and to enter judgment dismissing with prejudice the instant case.

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court, who will send notification of such filing to the parties subscribing to the CM/ECF System.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of September 2020.

**INÉS DEL CARMEN CARRAU MARTÍNEZ**
Interim Secretary of Justice

**WANDYMAR BURGOS-VARGAS**
Deputy Secretary in Charge of Litigation

**SUSANA PEÑAGARÍCANO-BROWN**
Director of Federal Litigation and Bankruptcy Division

*S/ Idza Díaz Rivera*
**IDZA DÍAZ RIVERA**
USDC No. 223404
Department of Justice of Puerto Rico
Federal Litigation Division
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel. 787-721-2900, Ext. 1421
Email: idiaz@justicia.pr.gov