IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **BELLA ARELENE OCASIO; <u>ET AL.</u>,** **Plaintiffs,** v. **COMISIÓN ESTATAL DE ELECCIONES; <u>ET AL.</u>,** **Defendants.** | **CIVIL NO. 20-1432 (PAD)** |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Before the court is plaintiffs' "Motion for Attorney Fees and Costs" (Docket No. 51), which defendants opposed (Docket No. 53). Plaintiffs replied (Docket No. 56). For the reasons that follow, the motion is granted in part to award fees in the amount of $64,415, without costs.

**I.   PROCEDURAL BACKGROUND**

On August 20, 2020, plaintiffs initiated this action against the Puerto Rico Elections Board ("CEE" by its Spanish acronym) and Juan Dávila-Rivera, then president of the CEE in his official capacity, seeking a temporary restraining order ("TRO"), and preliminary and permanent injunctive relief to allow senior (60+) citizens to benefit from early and absentee voting procedures in the November 2020 general election in Puerto Rico (Docket Nos. 1 and 2).[1] The reason for this was the high risk that this sector of the population had of suffering severe complications from COVID-19 if it was required to vote in person in crowded voting locations during election day. Id. Along this line, plaintiffs argued that forcing them to choose between their health foregoing

---

[1] The CEE is entrusted with "overseeing the election process, including updating voting policies as necessary, facilitating registration services, and organizing voting poll locations and ballots" (Docket No. 43-1, p. 1, n. 1).

their fundamental right to vote in the midst of a deadly pandemic was unnecessarily burdensome, when access to early and absentee voting would not only ensure that they could exercise their right to vote safely, but would also reduce overcrowding at voting locations and decrease the risk of infection for all. Id. That being so, they claimed that on balance, the burden placed on them was severe whereas the state's interest in maintaining existing policies was minimal at best. Id. Defendants asked that the case be dismissed (Docket Nos. 34 and 35).

On August 21, 2020, the court denied the request for a TRO (Docket No. 5), and after several procedural events, on September 11, 2020, granted in part plaintiffs' request for a preliminary injunction, ordering defendants to: (1) accord senior citizens the opportunity to vote early and by mail in the November 2020 elections; (2) extend the deadline for senior citizens to apply for early and absentee voting; and (3) apprise senior citizens of these rights by way of an educational media campaign (Docket No. 41). On September 14, 2020, it issued an Opinion and Order setting forth the basis for its ruling (Docket No. 48),[2] and on September 23, 2020, converted the preliminary injunction into a permanent one, entering judgment accordingly (Docket Nos. 49 and 50).

On November 2, 2020, plaintiffs requested payment of $67,680 in attorney's fees and $2,932.03 in costs (Docket No. 51).[3] On November 20, 2020, defendants opposed the requests, arguing that they were untimely and should be denied in their entirety (Docket No. 53, p. 2). In the alternative, they claimed that the fees should be reduced because of overstaffing and other

---

[2] On September 16, 2020, the court amended the Opinion and Order *nunc pro tunc* (Docket No. 43-1).

[3] Plaintiffs have sought fees corresponding to nine attorneys. The attorneys may be divided into three groups: Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss")(six attorneys); the American Civil Liberties Union of Puerto Rico ("ACLU-PR")(two attorneys); and the American Civil Liberties Union Foundation ("ACLU Foundation")(one attorney)(Docket No. 51, p. 10).

Case 3:20-cv-01432-PAD   Document 57   Filed 12/26/23   Page 3 of 9

Ocasio, et. al. v. CEE, et. al.
Civil No. 20-1432 (PAD)
Opinion and Order
Page 3

grounds discussed below. Id. at 3-4. Plaintiffs countered that the requests were not untimely; denied that there was overstaffing; and asserted that the hours billed were reasonable in light of the complex and urgent nature of the case. Id. at 4-5

## II.   DISCUSSION

### A. Attorney's Fees

Litigation in federal court operates under the general maxim that "each side" bears its own expenses, which implies that for the most part, prevailing parties are not entitled to recover attorney's fees. In re Puerto Rican Cabotage Antitrust Litigation, 815 F.Supp.2d 448, 457 (D.P.R. 2011). By exception, in actions seeking "vindication of civil rights," prevailing plaintiffs may be entitled to reasonable attorney's fees as part of the costs. 42 U.S.C. § 1988. Defendants do not contest plaintiffs' status as prevailing party or plaintiffs' proposed rates, only the motion's timeliness; the number of attorneys that worked on the case; and issues related to the time entries (Docket No. 53).

#### 1. Timeliness

Fed. R. Civ. P. 54(d)(2)(B) provides that unless a statute or a court order provides otherwise, a claim for attorney's fees must be filed "no later than 14 days after the entry of judgment." Because the motion here was filed after expiration of this period, defendants claim the motion is untimely and should be denied (Docket No. 53). Nevertheless, Local Civ. Rule 54(b) states that motions for attorney's fees must be filed "within 14 days after the expiration of the time for filing a timely appeal" unless an appeal is filed, in which case, the motion is due 14 days after issuance of the mandate. Id.

Case 3:20-cv-01432-PAD   Document 57   Filed 12/26/23   Page 4 of 9

Ocasio, et. al. v. CEE, et. al.
Civil No. 20-1432 (PAD)
Opinion and Order
Page 4

The Local Rules "are established by court order." Lebrón-Vázquez v. Commissioner of Social Security, 2022 WL 225287, *4 (D.P.R. Jan. 26, 2022). From there, the term set in Local Rule 54(b) applies. See, Figueroa-Ramos v. Fernández-Rojo, 2011 WL 1743106, **3-4 (D.P.R. Mar. 29, 2011), report and recommendation adopted, Civ. No. 09-1277 (FAB), Docket No. 112 (D.P.R. Apr. 6, 2011)(evaluating request for attorney's fees under Local Rule 54). Shifting lenses, the time for defendants to appeal expired on October 23, 2020. No appeal was filed. Thus, plaintiffs' motion was due on or before November 6, 2020. As it was filed on November 2, 2020, it is timely.

### 2. **Reasonableness of Lodestar Calculation**

Plaintiffs submitted itemized accounts of the time that their attorneys worked in the case; a brief description of the work they performed; and the date on which each task was done, all in all reflecting 300.8 hours of work (Docket No. 51, p. 10).[4] To be acceptable, the accounting must be reasonable. To test it for reasonableness, the court applies the lodestar method. See, Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1191 (1st Cir. 1996)(using lodestar method to determine what fees to award a prevailing party in actions that fall within the ambit of 42 U.S.C. § 1988); Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 336-337 (1st Cir. 1997)(same with respect to evaluation of fees under Title VII of the Civil Rights Act of 1964).

The lodestar method provides a "threshold point of reference." Grendel's Den v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). It is reached "multiplying the total number of hours reasonably spent by a reasonable hourly rate. Id. Duplicative, excessive, unproductive, or otherwise

---

[4] Moreover, plaintiffs included a declaration under penalty of perjury from Lissette Duran, one of the attorneys in their legal team, as well as the *curriculum vitae* of the other attorneys who worked on the case (Docket Nos. 51-1, 51-4, 51-5, 51-6).

Case 3:20-cv-01432-PAD   Document 57   Filed 12/26/23   Page 5 of 9

Ocasio, et. al. v. CEE, et. al.
Civil No. 20-1432 (PAD)
Opinion and Order
Page 5

unnecessary hours are excised. Id. Hourly rates are "often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience and competence." Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015). Putting it together, the court may adjust the potential award on factors not captured in the calculation. Id. In the instant case, the methodology yields the following result.

First, as alluded to earlier, defendants do not object to plaintiffs' attorneys' billing rates, and the court independently finds them reasonable. Plaintiffs' legal team runs the gamut from (at the time) second-year associates to attorneys with many years of experience in civil rights litigation. In most circumstances, "there is not a single reasonable rate for legal services but, rather, a range of reasonable rates." Pérez-Sosa v. Garland, 22 F.4th 312, 326 (1st Cir. 2022). However, taking into consideration counsels' years of experience; the quality of the briefings; the prevailing market rate; and the degree of success of their claims, plaintiffs' proposed fees are reasonable and in line with the fees sought in this district for attorneys with a comparable level of experience.[5]

Second, as to the hours billed, plaintiffs seek compensation corresponding to 300.8 hours, which multiplied by the appropriate rate for each attorney amounts to $67,680 (Docket No. 51, p. 4). Defendants object on various grounds, including overstaffing and redundancy (Docket No. 53, pp. 3-4). Courts should discount hours when it is appears that a prevailing party "overstaffed" the

---

[5] The general standard in this district oscillates from $250 to $300 for experienced attorneys, $150 to $200 for associates, and $100 for law clerks and paralegals. See e.g., Skytec, Inc. v. Logistic Sys., Inc., 2019 WL 1271459 (D.P.R. Mar. 15, 2019), amended on reconsideration, 2019 WL 2246775, *2 (D.P.R. May 23, 2019)(so finding); CH Properties, Inc. v. First Am. Title Ins. Co., 204 F.Supp.3d 416, 421 (D.P.R. 2016)(finding $250.00 hourly rate reasonable for experienced attorneys). To reach this level, some of plaintiffs' attorneys significantly reduced their hourly rates from their ordinary hourly rate, as for example Jaren Janghorbani, who had a customary rate of $1,410, and reduced it to $300 (Docket No. 51, p. 10)

case. Gay Officers Action League v. P.R., 247 F.3d 288, 297 (1st Cir. 2001). But given the complexity of modern litigation it must be careful not to throw out the baby with the bath water. Id. Although not dispositive, it has been recognized that a case is not overstaffed when "a minority of the attorneys bill a majority of the work." Esso Standard Oil Co. (P.R.) v. López-Freytes, 577 F.Supp.2d 553, 560 (D.P.R. 2008). Following this route, 71.25% of the hours billed correspond to work performed by attorneys Lissette Duran (115.2 hours); Makiko Hiromi (61.7 hours); and Adriel Cepeda (34 hours, 26 minutes) (Docket Nos. 51, p. 10; 51-3, p. 1). Furthermore, time spent by more than one attorney on the same task is not "*per se* duplicative." Rodríguez-Hernández v. Miranda-Vélez, 132 F.3d 848, 860 (1st Cir. 1998). Effective preparation and presentation of a case often involves the kind of collaboration "that occurs when several attorneys are working on a single issue." Gay Officers Action League, 247 F.3d at 297. That is particularly so considering the unique set of circumstances within which plaintiffs' attorneys worked.

Contrary to defendants' suggestion, the case was by no means "simple." Plaintiffs sought relief in order to assert voting rights during the COVID-19 pandemic in a case filed less than three months before the November 2020 general election in the context of a fluid factual and legal landscape marked by the approval of the Puerto Rico Election Code of 2020, Law No. 58 of June 20, 2020; a Joint Legislative Resolution, Joint Resolution No. 37 of June 4, 2020, expanding categories of individuals eligible for early voting, including senior citizens, during the primaries to be held on August 9, 2020; and serious administrative irregularities plaguing those primaries. See, Pierluisi Urrutia v. State Elections Board, 104 P.R. Offic. Trans. 53 (2020)(describing irregularities). Those irregularities led the CEE to, among other things, suspend the election in electoral precincts where voting had not begun by 1:45 P.M. until August 16, 2020. Id. On August

Case 3:20-cv-01432-PAD   Document 57   Filed 12/26/23   Page 7 of 9

Ocasio, et. al. v. CEE, et. al.
Civil No. 20-1432 (PAD)
Opinion and Order
Page 7

12, 2020, the Puerto Rico Supreme Court upheld the decision, not before severely criticizing the CEE.[6] As the Chief Judge noted, "[t]housands of Puerto Ricans took time, risked their lives notwithstanding a potential infection with COVID-19, made arrangements at work or home, awaited in lines under the sun, and paid for transportation or went on foot--more than once--to exercise their right to vote. Many even volunteered to work at the polling places to ensure the integrity of the proceedings, *and the [CEE] failed them miserably.*" Id. at 18 (italics in original).

On August 25, 2020, five days after plaintiffs filed the complaint, the electoral commissioners added the category of senior citizens to the list of voters eligible for early voting in the November 2020 elections (Docket No. 43-1, pp. 6-7). Nevertheless, they disagreed on early voting by mail. Id. Two days later, because of the disagreement, the CEE President ruled that voters eligible for early voting could vote by mail. Id. at 7. Still, there was no legal impediment for the Commissioner to unanimously eliminate senior citizens from the category of voters eligible for early voting and voting by mail. Thus, not only did the case involve specialized legal questions within a novel, rapidly evolving backdrop, but time was of the essence, which satisfactorily explains not only plaintiffs' staffing needs but also how pre-litigation and litigation work was distributed among the different attorneys that participated in the case.

---

[6] See, Pierluisi Urrutia, 104 P.R. Offic. Trans. at 6 ("The [CEE] failed to comply with its duty to organize, direct and hold a full electoral process for the scheduled primaries, in violation of the [applicable] constitutional and electoral tenets"); 18 ("August 9, 2020 will now mark the day, before the eyes of the world, when millions of Puerto Ricans witnessed a disaster that besmirched our electoral process. The administrative incompetence of the [CEE] and its chief officials denied voters their fundamental right of suffrage")(Oronoz-Rodríguez, C.J.)(concurring); 24-25 ("What a disgrace! A travesty! The indignity of it all! Last Sunday, we observed in disbelief --although not with complete surprise-- the electoral fiasco that became of the primaries held just a few weeks before a general election") (Rodríguez-Rodríguez, J.)(concurring); 43 ("The events of August 9, 2020 during the primaries of the New Progressive Party and the Popular Democratic Party constitute one of the most regrettable failures of electoral justice and democracy in the history of Puerto Rico. The [CEE's] administration and operation of this election was not only incompetent and gravely negligent but it was contrary to its enabling act and interpretive regulations")(Estrella-Martínez, J.)(concurring).

As for defendants' requests to bill unsuccessful time entries, those came as a direct result of defendants' failure to initially respond in a timely manner. To boot, the attorneys' time entries are well organized and sufficiently detailed to permit meaningful review. Taking into consideration the totality of circumstances, all hours were reasonably expended except for the 15.5 hours ($3,265) allocated to drafting, editing, and reviewing a consent decree between September 8 and 9, 2020. Id. at p. 16. No proposed consent decree was asked for here, and none was entered into by the parties. Plaintiffs note that their counsel "offered to share a draft consent order to structure a potential settlement between the parties" (Docket No. 56, p. 7). Yet, defendants observe that their counsel "expressed from the first virtual meeting that [d]efendants would not be signing a consent decree" (Docket No. 53, p. 5). Also, they point out that settlement was considered, but their counsel clearly expressed that no consent decree would be signed, and as she was clear on this, attorney's fees requested as to a consent decree must be denied. Id. The statement is uncontradicted. With this adjustment, plaintiffs are entitled to $64,415 in attorney's fees.

### B. Costs

Local Civ. Rule 54(a) provides that bills of costs shall be filed "within fourteen (14) days of the entry of judgment." As judgment was entered on September 23, 2020, plaintiffs had until October 7, 2020, to timely request costs. They did so on November 2, 2020 (Docket No. 51). "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made[ ] before the original time or its extension expires; or . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). Plaintiffs, however, provided no explanation for the delay. Hence, their request for costs must be denied.

### III.  CONCLUSION

For the reasons stated, the court GRANTS IN PART plaintiffs' "Motion for Attorney's Fees and Costs" (Docket No. 51), to award them $64,415, rather than $67,680, in attorney's fees, and no costs.

**SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of December, 2023.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge