IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BELIA ARLENE OCASIO, et al.<br><br>Plaintiffs,<br><br>v.<br><br>COMISIÓN ESTATAL DE ELECCIONES, et al.<br><br>Defendants | CIVIL NO. 20-1432 (PAD) |

MOTION FOR RECONSIDERATION PURSUANT TO
RULE 59(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE

TO THE HONORABLE COURT:

**COMES NOW** the Department of Justice of the Commonwealth of Puerto Rico, through the undersigned attorney, on behalf of Defendants, Comisión Estatal de Elecciones, Jessika Padilla, Acting President, in her official capacity, and very respectfully states, avers, and prays as follows:

## I.      PROCEDURAL BACKGROUND

On August 20th, 2020, Plaintiffs filed a Complaint, Motion requesting Temporary Restraining Order ("TRO"), and Preliminary Injunction.[1] Plaintiffs alleged that the policies of Defendant Comisión Estatal de Elecciones ("CEE") regarding early voting for the November 2020 elections only contemplated in-person voting and did not provide for any

---

[1] Docket Nos. 1 and 2.

exceptions for voters over sixty (60) years old, including absentee voting.[2] Plaintiffs further alleged that these restrictive policies were burdensome for all voters over sixty (60) years old due to Covid-19's threat to their health.[3]

Plaintiffs requested the Court to: (1) enter a declaratory judgment "that the Commission's failure to allow senior citizens ... access for early and absentee voting for the general election in November, in the midst of a deadly pandemic, violates the First and Fourteenth Amendments;"[4] and (2) "enter temporary, preliminary, and permanent injunctions directing Defendants, their agents, employees, and successors, and all those persons acting in concert or participation with them to implement policies allowing senior citizens to safely vote in the November 2020 general election."[5] As part of this last remedy, Plaintiffs requested the Court to order Defendants to: (1) identify "voters over sixty years of age as individuals eligible to vote by *voto adelantado* during the pendency of the COVID-19 pandemic;" (2) identify "voters over sixty years of age as individuals eligible to vote by *voto ausente* (mail-in ballot) during the pendency of the COVID-19 pandemic;" and (3) update "all public education materials, including written, online, and on-air, to reflect the above eligibility rules."[6]

On August 21st, 2020, the Honorable Court denied Plaintiffs' TRO; ordered Plaintiffs to serve Defendants with summons on that same date; and Defendants to answer by August

---

[2] Docket No. 1, ¶¶ 1-3, p 1-2.
[3] Id., ¶¶ 3-4, p. 2.
[4] Id., ¶ 1, p. 26.
[5] Id., ¶ 2, p. 26.
[6] Id., ¶ 2(a)-(c), p. 26.

31st, 2020.[7] On September 1st, 2020, Plaintiffs filed a Motion requesting entry of default against Defendants,[8] which was denied **for not being "supported by Fed.R.Civ.P. 55(a),"** [Emphasis added], and ordered defendants to show cause, by September 4th, 2020, as to why the request for preliminary injunction should not be granted.[9]

On September 4th, 2020, Defendants appeared and requested an extension of time until September 11th, 2020, to comply with the Court's Order at Docket No. 20.[10] Defendants' request for an extension of time was granted.[11] Plaintiffs requested an Emergency Motion for Reconsideration of the Court's order granting the extension of time,[12] which Defendants answered[13] in compliance with the Court's Order.[14]

On September 9th, 2020, the Court held a Status Conference, in which, after discussing the case, reiterated that Defendants were to answer the Injunction and the Complaint by September 11th, 2020, by noon.[15] On September 10th, 2020, Plaintiffs filed an Amended TRO and Preliminary Injunction.[16]

On September 11th, 2020, Defendants filed a Motion to Dismiss for lack of jurisdiction and Response in Opposition to Motion requesting Preliminary Injunction, and answered the Complaint.[17] On that same date, the Court held a Status Conference and

---

[7] Docket No. 5.
[8] Docket No. 19.
[9] Docket No. 20. [Emphasis added].
[10] Docket No. 24.
[11] Docket No. 25.
[12] Docket Nos. 25 and 26.
[13] Docket No. 28.
[14] Docket No. 27
[15] Docket No. 33.
[16] Docket No. 32.
[17] Docket Nos. 34 and 35.

granted in part Plaintiffs' request for injunctive relief "to recognize senior (60+) citizens the right to apply for early voting and to extend until September 24, 2020, the deadline for those voters to apply for early voting," and ordered an increase in media orientation during said period.[18] On September 14th, 2020, the Court entered an Opinion and Order granting in part Plaintiffs' request for Preliminary Injunction, later amended on September 16th, 2020.[19]

On September 23rd, 2020, the Court entered a Memorandum and Order converting the preliminary injunction into a permanent injunction; entered Judgment granting in part Plaintiffs' request for a permanent injunction; and dismissed their request for voting lists.[20]

On November 2, 2020, Plaintiffs filed a Motion requesting attorneys' fees in the amount of $67,680.00, and costs.[21] In compliance with the Court's Order, on November 20, 2020, Defendants responded and moved the Court for a reduction of the attorney's fees based on duplicity of work performed by multiple attorneys and on unsuccessful claims.[22] On December 2, 2020, Plaintiffs replied.[23] On December 26, 2023, the Court granted in part Plaintiffs' request for attorney's fees in the amount of $64,415.00, reducing only the fees for Plaintiffs' efforts in preparing a consent decree that Defendants indicated from day one that they would not sign.[24]

---

[18] Docket No. 38.
[19] Docket Nos. 42 and 43.
[20] Docket Nos.49 and 50.
[21] Docket No. 51.
[22] Docket Nos. 52 and 53.
[23] Docket No. 56.
[24] Docket No. 57.

Defendants hereby request this Honorable Court to reconsider its Opinion and Order and further reduce Plaintiffs' attorney's fees considering the limited success on their claims, unsuccessful tasks, and overstaffing.

## II.      STANDARD FOR RECONSIDERATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(E)

It is settled that in motions for reconsideration under Fed. R. Civ. P. 59(e), "the moving party must 'either establish a manifest error of law or must present newly discovered evidence.'" Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004)). Any motion seeking the reconsideration of judgment or order is considered a motion to alter or amend judgment under Fed. R. Civ. P. 59 (e) if it seeks to change the order or judgment issued. Hatfield v. Board of Country Comm'rs for Converse County, 52 F. 3d 858, 861 (10th Cir. 1995).

Defendants respectfully request the Court to reconsider its Opinion and Order at Docket No. 57 for manifest error of law by not reducing attorney's fees for several unsuccessful requests for relief/tasks and overstaffing by Plaintiffs.

## III.      ANALYSIS

### A.  The lodestar method requires reasonability in calculating attorney's fees.

The Civil Rights Attorney's Fees Awards of 1976, 42 U.S.C. § 1988, provides for the award of reasonable attorney's fees to prevailing parties in an action under Section 1983. 42 U.S.C. § 1988.  The Court's touchstone in awarding fees to a prevailing party in a civil rights action is the reasonableness of the fees requested. López Quiñones v. Puerto Rico

National Guard, 715 F.Supp 2d. 233, 242 (D.P.R. 2010) (citing Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008)).   In assessing attorney's fees, courts use the "lodestar method" as the proper methodology in determining the reasonableness of the award. In this method, the court multiplies the number of hours reasonably expended on litigation by a reasonable hour rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (citing Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992)).

The lodestar calculation may be adjusted by the results obtained, which is a crucial factor in cases where plaintiffs are deemed "prevailing" even though they succeeded only on some of their claims for relief. Id. at 434. To this extent, the Hensley Court expressed:

> "If … a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained."

> Id. at 436. [Emphasis added].

That the plaintiff is a prevailing party says little about "whether the expenditure of counsel's time was reasonable in relation to the success achieved." Hensley, 461 U.S. at 436. The district court may identify specific hours that should be eliminated or may simply

reduce the award to account for the limited success. Id. at 436-37. When an adjustment is requested based on the limited nature of the relief obtained by the plaintiff, "the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained."[25] Id. at 437.

It is well settled that fee-shifting statutes are not designed "to serve as full employment or continuing education programs for lawyers or paralegals." Lipsett, 975 F.2d at 938. Moreover, a court "should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." Gay Officers Action League, 247 F.3d at 297 (citing Hart v. Bourque, 798 F.2d 519, 523 (1st Cir. 1986)). To this extent, the Gay Officers Court expressed:

> "[W]e remain skeptical about the use of **four attorneys to litigate a single claim**-particularly a claim **that did not necessitate a trial**. Where tag teams of attorneys are involved, fee applications **should be scrutinized with especial care**. Moreover, the level of scrutiny should increase in direct proportion to the number of lawyers employed."

> Id. at 298. [Emphasis added].

As a general matter, "the time for two or three lawyers in a courtroom or conference, when one would do, 'may be obviously discounted.'" Lipsett, 975 F.2d at 938 (quoting Hart, 798 F.2d at 523); King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir. 1977). A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism. Id. at 938-939 (citing United Nuclear Corp. v. Cannon, 564 F.Supp.

---

[25] A Court's finding that "the [significant] extent of the relief clearly justifies the award of a reasonable attorney's fee" fails to answer the question of what is reasonable in light of that level of success. Hensley, 461 U.S. at 438-39.

581, 590 (D.R.I. 1983) (suggesting that, in fee shifting milieu, district courts "must zealously

guard against any propensity to over-staff litigation."))

After calculating the initial amount of the award, attorney's fees may be "reduced

because of (1) the overstaffing of a case, (2) the excessiveness of the hours expended on the

legal research or the discovery proceedings, (3) the redundancy of the work exercised, or

(4) the time spent on needless or unessential matters." Ramos v. Davis & Geck, Inc., 968

F.Supp.765, 775 (D.P.R. 1997) (citing Hensley, 461 at 432-35). When the court arrives at the

lodestar and considers all possible adjustments, **it ought to provide a "concise but clear"**

**explanation of its calculation of the resultant fee award**. Id. at 337 (citing Hensley, 461 U.S.

at 437) (Emphasis added).

In Gay Officers, 247 F.3d at 298, even though the First Circuit was skeptical in

allowing attorney's fees for **four attorneys** working on a single claim case **that did not**

**necessitate trial**, it granted the fees based on the "peculiar circumstances" of the case, which

are not present here.

> "First, the trial judge had the best coign of vantage. He was uniquely
> positioned to weigh the parties' staffing needs, assess the reasonableness of
> their handling of the case, and evaluate the quality and relevance of the
> services rendered. Second, the **judge explained his reasoning for allowing**
> **fees for multiple attorneys in meticulous detail.** Third, the attorneys' proffer
> to the district court persuasively described their division of responsibility and
> their need for teamwork." Id. [Emphasis added].

In the instant case, the Honorable Court justified allowing attorney's fees for a total

of **nine (9) attorneys in a single claim case**, which did not necessitate trial or an evidentiary

hearing. The Court, in allowing attorney's fees for **nine (9) attorneys**, cited Esso Standard

Oil (P.R.) v. López-Freytes, 577 F.Supp.2d 553, 560 (D.P.R. 2008) and stated: "Following

this route, 71.25% of the hours billed correspond to work performed by attorneys Lissette Duran (115.2 hours); Makiko Hiromi (61.7 hours); and Adriel Cepeda (34 hours, 26 minutes)."[26] Defendants move this Court to reconsider the lodestar method as applied to the excessive number of counsel here.

It is clear from Defendants' Response in Opposition to Motion for Attorney's Fees and Costs, that the main objection as to overstaffing the case did not make specific reference to attorneys Lissette Duran and Adriel Cepeda.[27] Reference was made to attorneys Juan Gascon, Lilibeth Celo, Federico Varni, Makiko Hiromi, and Jaren Janghorbani, all of whom billed the amount of <u>$22,060.00</u>. Nonetheless, a review of the tasks performed by <u>all</u> these attorneys reveal the effects of overstaffing, resulting in duplicative tasks. The Court failed to explain its reasoning for allowing fees for all **nine (9) attorneys** in a single claim case in meticulous detail.

For instance, attorney Lissette Duran billed eight (8) duplicative and general entries, totaling <u>$7,807.50</u>, for "review materials" received from the ACLU, without any specificity as to the "materials" being reviewed. For attorneys to recover fees, they must submit a full and precise accounting of their time, including specific information about "the nature of the work performed." <u>Deary v. City of Gloucester</u>, 9 F.3d 191, 197-98 (1st Cir. 1993). The problem with entries containing only "gauzy generalities" is that "they fail to allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time

---

[26] Docket No. 57, p. 6.
[27] Docket No. 53, p. 4

spent."[28] <u>Guillemard-Ginorio v. Contreras</u>, 603 F.Supp.2d 301, 317 (D.P.R. 2009) (<u>citing</u> <u>Lipsett</u>, 975 F.2d at 938). Furthermore, multiple attorneys held a total of twenty-six (26) meetings and/or conferences among them, as Exhibit 1 shows,[29] billing a collective amount[30] of **$11,812.50.** The attorney's fees for the duplicity of these tasks must be reduced. <u>Id.</u> at 320. (The Court found that duplicity may have resulted from numerous conferences and reduced by twenty percent all non-court time when counsel acted together).

Moreover, attorneys Lissette Duran, Makiko Hiromi, Jaren Janhorbani, and Lilibeth Clelo billed thirteen (13) duplicative entries for revisions to the TRO brief (which was denied) and the complaint, in an amount of **$8,769.50**. From a review of Exhibit 1, it can be concluded that the tasks for which most of the attorneys billed could have been performed by two (2) or three (3) attorneys in a single claim case, such as this one. Therefore, Defendants respectfully request the Court to reconsider the attorney's fees granted and reduce them, as requested.

### B. Attorney Mayte Bayolo's fees must be calculated considering the prevailing market, among other factors.

In calculating a reasonable hourly rate, the Court should consider the prevailing market rate in the community where the court sits, the type of work performed, who performed it, the expertise that it required, and when it was undertaken. <u>Grendel's Den, Inc.</u> <u>v. Larkin</u>, 749 F.2d 945, 951 (1st Cir. 1984); <u>Fryer v. A.S.A.P. Fire and Safety Corp. Inc.</u>, 750

---

[28] By way of contrast, the ACLU itemized statements at all times, identified the documents being reviewed or somehow worked on.

[29] Docket No. 51-1, pp. 15-16.

[30] Defendants use the term "collective amount" because Plaintiffs' counsels' bill several tasks within the same entry, making it impossible to separate the time spent on each task on the specific entries.

F.Supp.2d 331, 338-39 (D. Mass 2010). The prevailing market rate in a community is the rate charged "for similar services by lawyers of reasonable comparable skill, experience and reputation." Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1190 (1st Cir. 1996) (quoting Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984)).

As set forth by the First Circuit in Grendel's Den, Inc. and Andrade, in the interest of fairness, the Court should revisit the attorney's fees rate of $250.00 per hour for the 21.6 hours requested by attorney Mayte Bayolo.[31] Counsel Bayolo's curriculum vitae ("CV") states that by the dates billed, she was not admitted to the United States District Court for the District of Puerto Rico ("USDCPR").[32] Further, per her CV, Ms. Bayolo was not a litigation attorney within the ACLU, but a legislative attorney that had no previous experience with federal civil right cases. Her CV states that her admission to the USDCPR was "in process." Therefore, her rate should be lowered, more so when compared to counsel Arraiza, for instance, who has been admitted to the USDCPR since the year 2000,[33] has plenty of experience litigating cases in this district and charges $300 per hour. Under Gay, the Court is called to "scrutinize with special care" the billing of this team of attorneys. As such, Defendants submit that Ms. Bayolo's rate should be revisited and deemed excessive. Defendants contend that attorney Ms. Bayolo's rate should be reduced in half, to wit, $125.00 per hour, and awarded a maximum of **$2,662.50**.

---

[31] Docket No. 51-2, p. 3, 5.
[32] Docket No. 51-6, p. 1.
[33] Docket No. 51-5, p. 3.

C. **The Court should modify its application of the lodestar method along more reasonable lines.**

In its Opinion and Order, the Court denied Defendants' request for reduction of Plaintiffs' attorneys' fees with regards to: (1) unsuccessful claims/relief requests and tasks; and (2) duplicative efforts due to overstaffing. The Court only reduced 15.5 hours billed for drafting, editing, and reviewing a consent decree that Defendants had indicated they would not sign. The Court reduced the total amount of **$3,265.00** from Plaintiffs' requested attorney's fees of **$67,680.00**.

As to unsuccessful claims/relief requests and tasks, the Court denied most of Defendants request for reduction of fees even though most of Plaintiffs' requests for relief were not granted. This Honorable Court should consider "the relationship between the amount of the fee awarded and the results obtained" as mandated by Hensley and make the appropriate reduction in attorneys' fees to the following unsuccessful relief requests and tasks.

First, the unsuccessful TRO requested by Plaintiffs on August 20, 2020,[34] which was denied the following day,[35] and for which there are thirty (30) entries for attorney's fees between July of 29th, 2020, and August 20th, 2020, as billed at Docket No. 51-1. The attorneys' fees requested by Plaintiffs' nine attorneys, which Defendants contend constitutes overstaffing (per Gay Officers) should be reduced.  As a result, Plaintiffs' attorney's fees should be reduced by **$24,535.00**.

---

[34] Docket No. 2.
[35] Docket No. 5.

<u>Second</u>, Plaintiffs were unsuccessful in their Motion for Default Entry, denied by this Court the very next day it was filed.[36]  The attorney's fees requested by Plaintiffs that should have been reduced for this unsuccessful task amount to **$2,312.50**, as billed at Docket Nos. 51-2 and 51-3.

<u>Third</u>, the unsuccessful Emergency Motion for Reconsideration requested by Plaintiffs on September 4th, 2020.[37] The attorney's fees requested by Plaintiffs that should have been reduced for this unsuccessful task amount to **$435.00**, as billed at Docket Nos. 51-2 and 51-3. As to these, the Court explained in its Opinion and Order that they were allowed because "those came as a direct result of defendants' failure to initially respond in a timely manner."[38] Nonetheless, the electronic record of the case makes reference to the reason why they should have been denied – Plaintiffs' failure to support their request per Fed.R.Civ.P. 55(a). Therefore, the amounts granted for both unsuccessful tasks should be reduced from the attorney's fees granted to Plaintiffs.

<u>Fourth</u>, Defendants moved the Court to reduce the amount of **$13,132.50** on account of the unsuccessful request for relief in the Complaint. Plaintiffs made several requests for relief, to wit: (1) the entry of a declaratory judgment that the CEE's failure to allow senior citizens access to early and absentee voting for the general election in November, in the midst of a deadly pandemic, violates the First and Fourteenth Amendments; (2) Enter a temporary, preliminary and permanent injunction directing

---

[36] Docket Nos. 19 and 20.
[37] Docket No. 26.
[38] Docket No. 57, p. 8.

Defendants to implement policies allowing senior citizens to safely vote in the November 2020 general election by (a) identifying voters over sixty years of age as individuals eligible to vote by *voto adelantado* during the pendency of the COVID-19 pandemic, (b) identifying voters over sixty years of age as individuals eligible to vote by *voto ausente* (mail-in ballot) during the pendency of the COVID-19 pandemic, and (c) updating all public education materials, including written, online, and on-air, to reflect the above eligibility rules.[39] A review of the Judgment issued by the Court clearly establishes that Plaintiffs were unsuccessful in four (4) of the seven (7) requests for relief.[40] The Honorable Court only granted the preliminary and permanent injunction, which included the update of the education materials. Plaintiffs' request for the lists of senior citizens eligible was <u>dismissed</u> in the Judgment and the TRO was denied at the beginning of the case.[41]

<u>Fifth</u>, the Court should reduce by at least twenty percent (20%) the amount billed by multiple attorneys who held a total of twenty-six (26) meetings and/or conferences among them.  Exhibit 1 shows[42] billing of a collective amount of <u>$11,812.50.</u>[43] Like in <u>Guillermard-Ginorio</u>, those fees should be reduced (**The Court found** that **duplicity** may have resulted from numerous conferences **and reduced by twenty percent all non-court time when counsel acted together**). 603 F.Supp.3d at 320.

---

[39] Docket No. 1, p. 26.
[40] Docket No. 50.
[41] The declaratory relief requested was not mentioned in the judgment.
[42] Docket No. 51-1, pp. 15-16.
[43] Defendants use the term "collective amount" because Plaintiffs' counsels' bill several tasks within the same entry, making it impossible to separate the time spent on each task on the specific entries.

Sixth, as provided by the First Circuit in Grendel's Den, Inc. and Andrade, in the interest of fairness, the Court should reduce the attorney's fees rate of attorney Mayte Bayolo to an amount of **$2,662.50**.

## IV.   CONCLUSION

In its Opinion and Order, the Court granted Plaintiffs attorney's fees in the amount of $65,415.00, only reducing $3,265.00 of the total requested. This Court should revisit its grant for attorney's fees and make further reductions because Plaintiffs only had limited success in the relief requested, as this Court only granted three of their seven requests for relief.  The Court denied Plaintiffs' request for TRO, entry of default, and emergency motion for reconsideration. This reduction would be consistent with the Supreme Court's decision in Hensley. Also, the attorney's fees should be reduced due to the overstaffing of nine (9) attorneys in a single claim case, pursuant to the First Circuit's provisions in Lipsett and Gay Officers; and the rate for attorney Mayte Bayolo must be reduced based on Grendel's Den, Inc. and Andrade. Finally, attorney's fees should be reduced because of overstaffing, pursuant to the dispositions of the First Circuit in Gay Officers and Guillemard-Ginorio.

Defendants request that the Honorable Court reconsiders its Opinion and Order and reduce the attorney's fees granted to Plaintiffs, as detailed in the previous section, to an amount no less than **$43,077.50**.

**WHEREFORE,** Defendants respectfully request the Honorable Court to reconsider its Order at Docket No. 57 and reduce Plaintiffs' attorney's fees in an amount no less than **$43,077.50.**

**WE HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all counsel of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 23rd day of January 2024.

DOMINGO EMANUELLI-HERNÁNDEZ
Secretary of Justice

SUSANA I. PEÑAGARÍCANO-BROWN
Deputy Secretary in Charge of Litigation

MARCIA I. PÉREZ LLAVONA
Director of Legal Affairs
Federal Litigation and Bankruptcy Division

*S/ Idza Díaz Rivera*
IDZA DÍAZ RIVERA
USDC No. 223404
Department of Justice of Puerto Rico
Federal Litigation Division
PO Box 9020192
San Juan Puerto Rico, 00902-0192
Tel. (787) 721-2900, ext. 1421
Email: idiaz@justicia.pr.gov