**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BELIA ARLENE OCASIO and EFRAÍN COLÓN DAMIANI,<br><br>*Plaintiffs*,<br><br>v.<br><br>COMISIÓN ESTATAL DE ELECCIONES, *et al.*,<br><br>*Defendants*. | Case No. 3:20-cv-01432 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF INJUNCTION PURSUANT TO THE CONFIRMATION ORDER ISSUED BY THE TITLE III COURT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT .............................................................................................................................. 3

I.      Statutory Framework and Bankruptcy Plan ...................................................................... 3

II.     This Court has jurisdiction to award attorneys' fees. ........................................................ 3

III.    Plaintiffs' attorneys' fees are not subject to the Confirmation Order's Discharge Provision… ......................................................................................................................... 6

        A.      Plaintiffs' claim for attorneys' fees arose after the Effective Date and is therefore not subject to the Discharge Provision. ................................................... 6

        B.      Even if Plaintiffs' claim for fees arose before the effective date, Defendants failed to provide Plaintiffs adequate notice... ...................................... 8

CONCLUSION ......................................................................................................................... 12

**INTRODUCTION**

Nearly four years ago, acting under 42 U.S.C. § 1983, Plaintiffs successfully challenged Puerto Rico's early- and absentee-voting policies for being unlawfully burdensome to voters during the peak of the Covid-19 pandemic. Since then, Defendants have fought Plaintiffs' efforts to recover attorneys' fees under the Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988. Now, for the first time, Defendants allege that the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") and the subsequent order confirming the Commonwealth's bankruptcy plan ("Confirmation Order") applies to this action and effectively deprives this Court of jurisdiction to enter any order on attorneys' fees.

Defendants' belated invocation of PROMESA fails, and this Court has jurisdiction to enter an order on attorneys' fees, which have not been discharged by the bankruptcy plan. First, nothing in PROMESA deprives the Court of authority to compel the Commonwealth to comply with federal laws, and 42 U.S.C. § 1988 is no exception. Second, Plaintiffs' claim accrued when this Court entered its order awarding fees, on December 26, 2023, well after the Confirmation Order. And third, even if Plaintiffs' claim accrued before the Confirmation Order (which it did not), the Order's Discharge Provision does not apply because Defendants failed to provide Plaintiffs with adequate notice. Indeed, at this late date, having litigated the fee petition extensively on the merits, Defendants are estopped from claiming that the Court ought to have never entertained their arguments in the first place. Accordingly, Plaintiffs respectfully ask the Court to deny Defendants' motion for reconsideration and enforce an order for attorney's fees.

# BACKGROUND

On August 20, 2020, Plaintiffs initiated this action against the Puerto Rico Elections Board ("CEE"), seeking a temporary restraining order, and preliminary and permanent injunctive relief to allow citizens over 60 to utilize early and absentee voting in the November 2020 general election. ECF No. 1. On September 11, 2020, the Court granted in part Plaintiffs' request for a preliminary injunction, ordering Defendants: (1) To recognize senior (60+) citizens the right to early voting by mail, and to extend until September 24, 2020, the deadline for those voters to apply for early voting; and (2) to put forth a media orientation campaign to apprise senior citizens of their rights. ECF No. 42. On September 23, 2020, the Court converted the preliminary injunction into a permanent one, rendering Plaintiffs the prevailing party in this case. ECF No. 49. At no point did Defendants note or argue that Plaintiffs' claim for injunctive and declaratory relief would be subject to PROMESA's automatic stay.

Plaintiffs moved for attorneys' fees on November 2, 2020, which Defendants opposed. ECF Nos. 51, 53. As the parties awaited a fee judgment, the Title III court confirmed Puerto Rico's Title III plan, which went into effect on March 15, 2022. Defendants never notified Plaintiffs or the Court that their pending fee application might be subject to the Title III plan. On December 26, 2023, almost two years after the Title III plan went into effect, this Court granted Plaintiffs' motion in part, reducing the amount of requested fees to $64,415. ECF No. 57. Defendants then moved for reconsideration. ECF No. 58. At no point in their reconsideration briefing did Defendants argue that Plaintiffs' fee request was subject to PROMESA's automatic stay, or that their claim for attorneys' fees would be subject to the Confirmation Plan's Discharge and Injunction Provisions. On May 6, 2024—almost four years after Plaintiffs first filed their fee petition—Defendants raised their PROMESA defense against fees for the first time.

2

# ARGUMENT

I. **Statutory Framework and Bankruptcy**

"[P]ROMESA creates a voluntary, in-court bankruptcy process for the Commonwealth and its instrumentalities modeled on the reorganization process for municipalities, codified in Chapter 9 of the Bankruptcy Code." *Colón-Torres v. Negrón-Fernández*, 997 F.3d 63, 69 (1st Cir. 2021). It incorporates the automatic stay provisions of 11 U.S.C. §§ 362 and 922, and discharge provisions of 11 U.S.C. §§ 944 and 524(a)(1) and (2). *See* 48 U.S.C. § 2161(a).

The Commonwealth filed a petition for adjustment of its debts on May 3, 2017, under Title III of PROMESA, 48 U.S.C. §§ 2161, *et seq*. When it did that, "it became a 'debtor' for purposes of PROMESA, and all actions enforcing a claim against the Commonwealth were automatically stayed." *Colón-Torres*, 997 F.3d at 69. On January 18, 2022, the Title III court confirmed the Commonwealth's Title III plan ("Title III Plan") via the Confirmation Order. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 636 B.R. 1 (D.P.R. 2022) ("Confirmation Order"). The plan's effective date was March 15, 2022.

II. **This Court has jurisdiction to award attorneys' fees.**

This Court has jurisdiction to enter an order awarding attorneys' fees. A fee petition is "an independent proceeding supplemental to the original proceeding," *Sprague v. Ticonic National Bank*, 307 U.S. 161, 170 (1939); *accord Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990), and "[a]llowance of such costs . . . is part of the historic equity jurisdiction of the federal courts." *Sprague*, 307 U.S. at 164. Importantly here, Congress has empowered the Court to award "a reasonable attorney's fee" to a prevailing party in any action or proceeding to enforce Section 1983 under 42 U.S.C. § 1988(b). *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (recognizing Congress granted district courts "express statutory authorization" to award a reasonable attorney's

fee to prevailing parties in civil rights litigation via 42 U.S.C. § 1988(b)). Indeed, federal courts can consider fee awards even "years after the entry of a judgment on the merits." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451, n.13 (1982).

This Court's jurisdiction to enter an award on fees does not vanish because Defendants are subject to a Title III bankruptcy plan. *Cf. Mun. of San Juan v. Puerto Rico*, 919 F.3d 565, 575 (1st Cir. 2019) ("[S]tate and federal courts handling nonbankruptcy litigation that is somehow tied to the filing of a federal bankruptcy case . . . [have] concurrent jurisdiction to initially determine whether § 362(a)-(b) stays the proceeding. . . .") (citing *In re Mid-City Parking, Inc.*, 332 B.R. 798, 805 (Bankr. N.D. Ill. 2005). Rather, PROMESA itself clearly provides that "nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government . . . from compliance with Federal law or requirements." 48 U.S.C. § 2106. And Congress's grant of jurisdiction in 42 U.S.C. § 1988(b), is no exception. Indeed, 48 U.S.C. § 2106 was "intended to ensure that PROMESA would not supersede those federal requirements that PROMESA does not, by its terms, address." *Mun. of San Juan*, 919 F.3d at 581. The Confirmation Order doesn't "address" federal courts' jurisdiction to enter an order granting attorneys' fees under 42 U.S.C. § 1988(b)—much less how this authority is impacted by the Confirmation Order. Accordingly, that jurisdiction remains undiminished.

This makes good sense as a policy matter. By providing for the recovery of attorney's fees in successful civil rights actions, Section 1988 is a critical aspect of the private enforcement scheme that Congress designed for the Nation's civil rights laws. *See Hastings v. Maine-Endwell Cent. Sch. Dist., New York*, 676 F.2d 893, 897 (2d Cir. 1982) (Congress's "goal" in enacting 42 U.S.C. § 1988 "was to remove financial impediments that might preclude or hinder private citizens . . . from being able to assert their civil rights" (quotation marks omitted)); *Kessler v. Assocs. Fin.*

*Servs. Co. of Hawaii, Inc.*, 639 F.2d 498, 499 (9th Cir. 1981) ("Congress passed . . . 42 U.S.C. § 1988, to encourage private enforcement and redress of civil rights violations."). In enacting PROMESA, Congress evinced no intent whatsoever to undercut this carefully designed enforcement scheme or to deprive persons in Puerto Rico of the full protection of the federal civil rights laws.

This would all still be true even if PROMESA had some impact on the *enforceability* of a fee award (and for the reasons explained below, it does not have any such impact anyway.) Before the Court is a motion for reconsideration on this Court's fee award, which is simply an order establishing Plaintiffs' right to payment. This Court necessarily has the authority to issue such an order irrespective of PROMESA's operation. *See Colón-Torres*, 997 F.3d at 71 (finding the District of Puerto Rico had jurisdiction to enter an order mandating payment of a settlement arising out of a §1983 action despite the PROMESA stay). Indeed, Plaintiffs could not even have *sought* relief from the Title III Court under the Confirmation Order without first obtaining an order from this Court establishing that they have a claim, *i.e.*, "an enforceable obligation" to recover attorneys' fees, against the Commonwealth of Puerto Rico. *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *see* 11 U.S.C. § 101(5) (defining "claim" under the Bankruptcy Code); *see also Atiles-Gabriel v. Puerto Rico*, 256 F. Supp. 3d 122, n.1 (D.P.R. 2017) (Section 101(5) of the Bankruptcy Code incorporated into PROMESA).[1]

---

[1] Indeed, the Confirmation Order makes clear that the Title III court maintains "*concurrent* jurisdiction to the extent it has subject matter jurisdiction over all matters arising under PROMESA, arising out of, and *related to*, the Title III Cases." Confirmation Order at ¶ 83 (emphasis added). Consequently, the Court can also determine the applicability of the Discharge Provision and Injunction on Plaintiffs' claim for fees Plaintiffs' claim for attorneys' fees as well as enforce an order for attorneys' fees.

**III.     Plaintiffs' attorneys' fees are not subject to the Confirmation Order's Discharge Provision.**

Defendants argue that any order for attorneys' fees is subject to the Confirmation's Order Discharge Provision. That is wrong. Plaintiffs' claim for fees did not accrue until this Court granted Plaintiffs' petition for fees on December 26, 2023, well after the Title III Plan's Effective Date. And even if Plaintiffs' claim for fees had arisen before the Title III Plan's Effective Date, Defendants failed to provide Plaintiffs adequate notice of the Discharge Provision, rendering it unenforceable against Plaintiffs.

> **A.     Plaintiffs' claim for attorneys' fees arose after the Effective Date and is therefore not subject to the Discharge Provision.**

The Confirmation Order is the culmination of the PROMESA bankruptcy process. Per its terms, claims against the Commonwealth that were or should have been brought before the Title III Court are discharged if they "arose, in whole or in part, prior to the Effective Date [03/15/2022]" ("Discharge Provision"). Confirmation Order at ¶ 56 (emphasis added). The Confirmation Order also enjoins any actions to recover on the discharged claims ("Injunction Provision"). Confirmation Order at ¶ 59.

Here though, Plaintiffs' right to for attorneys' fees arose *after* the adjustment plan's Effective Date. As discussed, a claim is an ultimate right to payment, that is an enforceable obligation. *See Cohen*, 523 U.S. at 218; *Atiles-Gabriel*, 256 F. Supp. 3d at 125. Fees under 42 U.S.C. § 1988 are by definition discretionary. 42 U.S.C. § 1988 (stating "the court, in its *discretion*, may allow the prevailing party . . . a reasonable attorney's fee . . . ." (emphasis added)); *see also Hensley*, 461 U.S. at 429 ("[A] prevailing plaintiff should *ordinarily* recover an attorney's fee," but the district court must still determine whether "special circumstances would render such an award unjust" (internal quotations omitted) (citations omitted) (emphasis added)). Plaintiffs were not *entitled* to payment of attorneys' fees when they became the prevailing party on September 23,

6

2020.  Rather, Plaintiffs' right to payment only accrued when the Court exercised its discretion and awarded Plaintiffs' attorneys' fees on December 26, 2023.  Thus, Plaintiffs' claim did not arise until after the Title III Plan's Effective Date of March 15, 2022, and is not subject to the Discharge Provision and Injunction Provisions of the Title III Plan.

That conclusion is consistent with the Ninth Circuit's analysis in *Deocampo v. Potts*, another civil rights action where the existence of a municipal bankruptcy proceeding was held to be no impediment to the payment of a monetary award.  *See* 836 F.3d 1134, 1145 (9th Cir. 2016).  *Deocampo* involved a judgment for damages entered against police officers who worked for the City of Vallejo, California.  *Id.*  California law required Vallejo to "indemnify [] employee[s] for compensatory damages awarded under 42 U.S.C. § 1983."  *Deocampo*, 836 F.3d at 1141.  The plaintiffs' suit had been stayed when Vallejo filed a chapter 9 municipal bankruptcy petition and was reinstated when the bankruptcy court confirmed an adjustment plan.  *Id.* at 1137–39.  The plaintiffs' case proceeded to trial, which resulted in an award of compensatory damages.  *Id.* at 1139.  Vallejo argued that the compensatory damages award had been discharged in the bankruptcy, but the Ninth Circuit disagreed.  *Id.* at 1145.  The "triggering event" for purposes of Vallejo's obligation to pay indemnity under state law occurred not when the officers caused the underlying injury, but only when Vallejo assumed the officers' defense, which happened *after* the bankruptcy plan's confirmation.  *Id.*  Rejecting Vallejo's argument also served "the significant public policies of (1) holding accountable state actors who . . . violate the constitutional . . . rights of their fellow citizens; and (2) fully redressing the harms they have caused . . . ."  *Id.* at 1146.

So too here.  As in *Deocampo*, the municipal defendant's monetary obligation did not arise until well after the Confirmation Plan's Effective Date, when this Court awarded fees to them in December 2023.  And as in *Deocampo*, because the timeline so clearly allows it, the Court may

7

respect both, the policy considerations that follow from the Commonwealth's bankruptcy proceedings as well as the congressional directive to ensure that the civil-rights laws are properly enforced by private citizens.

### B. Even if Plaintiffs' claim for fees arose before the Effective Date, Defendants failed to provide Plaintiffs adequate notice.

Even if this Court determines Plaintiffs' claim arose *before* the Effective Date, Plaintiffs are still able to pursue their fees through this Court because Defendants failed to provide adequate notice of the Discharge Provision.

In bankruptcy proceedings, the Fifth Amendment's Due Process Clause imposes a requirement that creditors are afforded notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Section 521(a)(1) of the Bankruptcy Code codifies this requirement by imposing on the debtor the burden of listing its creditors and enumerating its liabilities to the bankruptcy court. 11 U.S.C. §§ 521(a)(1)(A), 521(a)(1)(B). Where a creditor's claim against the debtor is subject to discharge in a pending bankruptcy case, the First Circuit has held that each creditor must receive adequate notice to protect their rights. *In re San Miguel Sandoval*, 327 B.R. 493, 508 (1st Cir. B.A.P. 2005). It would be grossly prejudicial to apply the Discharge Provision here, where over the course of *years* litigating the fee issue, Plaintiffs never received notice of the bar date or Defendants' understanding that PROMESA applied to their attorneys' fees request until Defendants' eleventh-hour "Notice." *See, e.g.*, *id.* at 507 ("[A] debtor's objection to a late claim cannot constitutionally be sustained and the creditor's claim barred if the debtor's failure to list, or inaccurate listing of, the creditor causes the creditor to miss the proof of claim deadline.") (citation omitted).

8

Far from indicating that the fee petition ought to have been channeled through PROMESA proceedings, Defendants' conduct suggested exactly the opposite. Plaintiffs filed their petition for fees in November 2020—three years and seven months ago. ECF No. 51. Defendants opposed that request, but never suggested or argued that Plaintiffs' request for fees would be barred by the PROMESA petition. *See* ECF No. 53. Once the Court granted most of Plaintiffs' petition in December 2023 (ECF No. 57), Defendants then moved for reconsideration in January 2024 (ECF No. 58). That request made many arguments—all flawed[2]—but none claimed that Plaintiffs' fees petition was a "post-petition . . . pre-Plan of Adjustment . . . case against the debtor." ECF No. 70 at 7. After Plaintiffs' response, Defendants then sought leave and filed a reply in support of their Motion for Reconsideration. ECF No. 65. Yet again, that reply did not once mention PROMESA. *See id.* At each step of the way, Defendants expended the Court's and Plaintiffs' resources. It wasn't until May 6—*i.e.*, three years, six months, and four days after Plaintiffs' petition—that Defendants first raised the PROMESA issue with Plaintiffs and the Court. ECF No. 70.

Against this backdrop, the Court ought to rule that Defendants have either forfeited or are estopped from raising their late-arriving argument. Of course, "a party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). Here, Defendants have waited until even *after* their Rule 59 motion, instead raising what they now claim has all along been a dispositive argument in a filing styled as a mere "Notice." ECF No. 71; *but see* Local Rule 7(a) ("[A]ll matters to be submitted for consideration by the court shall be presented by *written motion* . . . incorporating a memorandum of law as appropriate[.]" (emphasis

---

[2] The Court's indication that it "intends to deny defendants' motion for reconsideration" after its "thorough review of the record and applicable law," makes this patently clear. Order re: Notice of Injunction, ECF No. 71 (May 7, 2024).

9

added)). That procedural failure alone should be fatal. *See Estancias de Cerro Mar, Inc. v. P.R. Aqueduct & Sewer Auth.*, No. CV 20-1664 (CVR), 2023 WL 8006585, at *2 n.6 (D.P.R. Nov. 17, 2023) ("[T]he 'Local Rules are designed to be followed not to be disregarded causing unequal treatment amongst litigants, and further punishing the diligent and rewarding the non-complying parties.'" (quoting *United States v. Pérez-Velázquez*, 488 F. Supp. 2d 82, 86 (D.P.R. 2007))). Moreover, because Plaintiffs dutifully litigated against defenses raised along the way, only to now watch Defendants "switch horses midstream," equitable or judicial estoppel against the Defendants would also be proper. *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 34–35 (1st Cir. 2004); *accord First Union Com. Corp. v. Nelson, Mullins, Riley & Scarborough*, 81 F.3d 1310, 1317 (4th Cir. 1996) (equitable estoppel "allows a person's act, conduct or silence when it is his duty to speak, to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action.") (internal quotations omitted).

Nor does it matter whether Plaintiffs, as putative creditors, had actual knowledge of the PROMESA plan of adjustment, inasmuch as the plan's general existence was widely known. Defendants still had to apprise creditors of the PROMESA proceedings' impact on *their* rights. Such notice, to be adequate, must "be prominently announced and accompanied by an explanation of its significance." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993). Thus, "a creditor's actual but generalized knowledge of the pendency of a bankruptcy case" does not impose on the creditor the burden of affirmatively determining whether and how to assert its rights in pending bankruptcy proceedings. *See In re San Miguel Sandoval*, 327 B.R. 493 at 507–08 (citing *Matter of Intaco Puerto Rico, Inc.*, 494 F.2d 94, 99 (1st Cir. 1974) (creditor with generalized knowledge through publication about the pendency of a bankruptcy case, but who lacked formal notice, was not barred from filing its claim late)).

10

To this end, bankruptcy law "distinguishes between 'known creditors,' who are entitled to receive direct notice of each stage in the reorganization proceedings, and 'unknown creditors,' for whom publication notice is sufficient." *In re Arch Wireless, Inc.*, 534 F.3d 76, 80 (1st Cir. 2008) (citing *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)). "An 'unknown creditor' is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)). "A 'known creditor,' by contrast, is one whose claims and identity are actually known or 'reasonably ascertainable' by the debtor." *Id.* at 81. Here, to the extent that Plaintiffs had a dischargeable claim even before any order of attorney's fees had issued, that claim was known and Plaintiffs were accordingly "known creditors." Defendants were fully aware of Plaintiffs' suit for declaratory and injunctive relief against its officers and that his fees "reasonably ascertainable." Thus, publication of the Confirmation Order did not provide sufficient notice that Plaintiffs' impending claim for payment of attorney's fees was subject to the Discharge or Injunction Provisions of the Confirmation Plan.

*In re Arch Wireless, Inc.* is instructive. *See* 534 F.3d at 80–84. That case found that a company that raised billing errors *before* a debtor filed for bankruptcy but sought a declaratory judgment ascertaining total damages *after* the bankruptcy plan was confirmed was a known creditor who had failed to receive adequate notice that their specific claims were subject to the bankruptcy plan. So too here. Defendants cannot argue that Plaintiffs' demand for declaratory and injunctive relief and the Court's subsequent entry of judgment aren't readily ascertainable claims for purposes of notice but are for purposes of a discharge of Plaintiffs' claims. Such an argument frustrates the underlying principles of the Due Process Clause's notice requirements

11

within the bankruptcy context and lays bare Defendants' *post-hoc* effort to (once again) thwart relief than a bona fide invocation of PROMESA.

## CONCLUSION

The Court should deny Defendants' motion for reconsideration and enforce an order for attorneys' fees.

Dated: June 3, 2024
       San Juan, Puerto Rico

Respectfully submitted:

/s/ Fermín L. Arraiza-Navas_____
Fermín L. Arraiza-Navas
#215705
farraiza@aclu.org
(787) 966-3133
American Civil Liberties Union
of Puerto Rico
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
(787) 753-9493

Adriel I. Cepeda Derieux**
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
Phone: (202) 457-0800
acepedaderieux@aclu.org

Lissette Duran**
Paul, Weiss, Rifkind, Wharton &
  Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
lduran@paulweiss.com
**Admitted *pro hac vice*

*Counsel for Plaintiffs Belia Arlene Ocasio and Efraín Colón-Damiani*

## CERTIFICATION

I hereby certify that I filed the within document via the ECF system on June 3, 2024, and that it is available for viewing and downloading to all counsel of record.

/s/ Fermín L. Arraiza-Navas_____
Fermín L. Arraiza-Navas
